IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> WEATHERFORD INTERNATIONAL, INC. and BJ SERVICES COMPANY, <br><br> Defendants. | <br><br><br> CIVIL ACTION NO. 3:07-CV-2144-N <br><br> Jury Demanded |

## WEATHERFORD'S BRIEF IN SUPPORT OF ITS MOTION TO ENFORCE THE LOCAL PATENT RULES, TO STRIKE PLAINTIFF'S MON 62¶ 3-1 INFRINGEMENT CONTENTIONS AND TO DISMISS PLAINTIFF'S CLAIMS NOT SUPPORTED BY VALID INFRINGEMENT CONTENTIONS

Defendant Weatherford International, Inc. ("Weatherford") submits this Brief in support of its accompanying Motion to Enforce the Local Patent Rules, To Strike Plaintiff Halliburton Energy Services, Inc.'s ("HES") Miscellaneous Order No. 62 ("MON 62") ¶ 3-1 Infringement Contentions and to Dismiss HES's Claims Not Supported By Valid Infringement Contentions.

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................................1

BACKGROUND ....................................................................................................3

    A.    Weatherford Sells Numerous Different FracGuard® Tools, Each Specific Tool Being Identified By A Unique Model Number ...............................3

    B.    HES Exercised No Diligence in Preparing Its Original MON 62 ¶ 3-1 Infringement Contentions—Which Lack Model Numbers.....................4

    C.    HES Refused to Move For Leave to Amend Its MON 62 ¶ 3-1 Infringement Contentions ......................................................6

ARGUMENT AND AUTHORITIES.............................................................................8

    A.    HES's April 2008 Rule 3-1 Disclosures Are Deficient and Should be Struck .......................................................................8

        1.    HES Refused to Comply with Rule 3-1's Requirement to Identify Each Accused Product by Model Number If Known .................8

        2.    *Davis-Lynch I* and *Davis-Lynch II* Interpret A Virtually Identical Rule In The Eastern District Of Texas And Support Weatherford's Requested Relief .................................................9

    B.    HES's Supplemental June 2009 Rule 3-1 Disclosures Should be Struck For Failure to Seek Leave of Court.....................................13

        1.    Rule 3-7 Unambiguously Requires HES to Seek Leave to Supplement Its Rule 3-1 Disclosures ................................13

        2.    The Real Reason HES Did Not Seek Leave—HES Can Not Meet The Rule 3-7 "Good Cause" Standard .................................15

CONCLUSION................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Berger v. Rossignol Ski Co., Inc.*,
   No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. April 25, 2006) ................................... 14

*Berger v. Rossignol Ski Co., Inc.*,
   No. C05-2523, 2006 WL 2038324 (N.D. Cal. July 17, 2006) ................................................. 14

*Computer Acceleration Corp. v. Microsoft Corp.*,
   503 F. Supp. 2d 819 (E.D. Tex. 2007) .................................................................................. 17

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
   No. 6:07-CV-559, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009) ............................ 10, 11, 12, 17

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
   No. 6:07-CV-559, slip op. (E.D. Tex. Feb. 20, 2009) ...................................................... 10, 12

*Informatica Corp. v. Business Objects Data Integration, Inc.*,
   No. C 02-3378 JSW, 2006 WL 463549 (N.D. Cal. Feb. 23, 2006) ........................................ 14

*O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed. Cir. 2006) .................................................................................... passim

*STMicroelectronics, Inc. v. Motorola, Inc.*,
   307 F.Supp.2d 845 (E.D. Tex. 2004) ................................................................................... 14

*West v. Jewelry Innovations, Inc.*,
   No. C 07-1812 JF (HRL),
   2008 WL 4532558 (N.D. Cal. Oct. 8, 2008) ................................................................... 14, 16

### RULES

Miscellaneous Order No. 62 Rule 3-1 ................................................................................ passim

Miscellaneous Order No. 62 Rule 3-7 ................................................................................ passim

## SUMMARY OF ARGUMENT

HES has known for at least six years that each Weatherford FracGuard® bridge plug and packer is identified by a model number.  Model numbers are the only mechanism available to identify each of the more than 200 Weatherford FracGuard® tools.  HES's April 2008 Rule 3-1(a)(2) infringement contentions, however, failed to identify and accuse each, or any, Weatherford tool, by model number or otherwise.  HES simply accused Weatherford's generic tradename, FracGuard®, including ten broad FracGuard® family names.  Likewise, HES's April 2008 Rule 3-1(a)(3) claim chart simply compared a single unspecified Weatherford packer and a single unspecified Weatherford bridge plug to the asserted claims.  Purportedly to remedy these gross deficiencies, but without seeking leave of Court to do so, HES served "supplemental" Rule 3-1(a)(2) and (3) contentions on June 17, 2009, which identified for the first time more than 200 Weatherford model numbers.  HES's original and supplemental disclosures are improper.

Specifically, HES has disregarded this Court's Rules, which required HES to (1) diligently seek the identity of each Weatherford accused product, (2) initially accuse each tool by model number, if known, (3) prepare a claim chart for each model number (or at a minimum obtain leave to prepare claim charts for what HES contends are representative examples), and (4) obtain leave of Court under Rule 3-7 before modifying its infringement contentions in any way.  HES has no excuse for failing to accuse each Weatherford tool by model number in its April 2008 contentions.  HES knew approximately six years ago that specific Weatherford tools had to be identified by model number when it requested inspection of specific Weatherford tools by model number in the first lawsuit.  Weatherford identified for HES in the first lawsuit 38 FracGuard® model numbers and identified over one year ago a total of 105 FracGuard® model numbers and many corresponding drawings.  Nonetheless, HES ignored this information and its past practice of identifying Weatherford tools by model numbers.  Yet, HES identified over one

hundred of its own model numbers in its April 2008 3-1(a)(6) disclosures, belying any HES argument that it had no duty to identify each accused Weatherford product by model number from the onset.

Rule 3-7 permits HES to amend its infringement contentions only in limited circumstances: "only by order of the presiding judge upon a showing of good cause." Rule 3-7 mandates that a party seeking to amend infringement contentions "must include in its motion to amend a statement" that new matters sought to be added "were not known to the party prior to the motion despite diligence in seeking out same." HES knows that it cannot make that statement because: (1) it unquestionably knew about many of Weatherford's model numbers for some time, and (2) it failed to exercise diligence in seeking out the rest. Because HES cannot meet the Rule 3-7 standard, it has contrived the argument that its amended Rule 3-1 disclosures are a "supplement," and not an "amendment" that would require leave of Court. This is an obvious attempt to circumvent this Court's requirement to show good cause to amend and is an intentional disregard of the Rule. HES's apparent position that it has accused these 200 plus models all along is refuted by the facts themselves—none of the model numbers are found in HES's original infringement contentions; moreover, to the extent HES contends that its use of the ten broad FracGuard® family names in its original contentions sufficiently identified each tool (which is not true), yet dozens of the model numbers added in HES's "supplement" do not even fall within these ten broad families. Clearly, Rule 3-7 required HES to move for leave to add all the model numbers, including those grouped in families outside those ten families identified by HES in its infringement contentions.

Weatherford therefore requests that this Court enforce its Rules by (1) striking HES's original MON 62 ¶ 3-1 infringement contentions for failure to specifically accuse Weatherford products with specificity, including by model number if known; (2) striking HES's June 17, 2009

amended 3-1 disclosures for failure to move for leave to amend and show good cause, as required by MON 62 ¶ 3-7; and (3) dismissing all claims of infringement against all Weatherford products for failure to properly accuse any of them under this Court's Rules. This relief is not only supported by Rule 3-1(b) of the Patent Rules, but also by recent decisions issued just a few months ago in Weatherford's favor in the Eastern District of Texas in a case with near identical facts. In *Davis-Lynch v. Weatherford et al,* the Eastern District of Texas held that Davis-Lynch's failure to identify Weatherford's products by model number under a virtually identical patent rule was grounds to exclude from the case all of Weatherford's tools that were not specifically identified by model number.

## **BACKGROUND**

### A.    **Weatherford Sells Numerous Different FracGuard® Tools, Each Specific Tool Being Identified By A Unique Model Number**

Weatherford sells over one hundred different models of FracGuard® composite bridge plugs and packers. Weatherford identifies each unique configuration of its composite bridge plugs and packers with a separate model number. The model numbers distinguish FracGuard® tools of different sizes (*e.g.,* tools for 4.5" and 5.5" inch casing), different lengths (*e.g.,* "shortys" v. standard length tools), different pressure and temperature ratings (*e.g.* tools rated for 250° F, 350° F, 10,000 psi, or other parameters), and FracGuard® tools of various other different functions and features (*e.g.*, internal ball, top ball, pump down, etc.). (Exh. 5, McKeachnie Decl. ¶4, A13). Thus, the term "FracGuard®" (or even a series name within the FracGuard® product line) is not a distinguishing identifier for any specific composite bridge plug or packer that Weatherford sells. Just like the name "Ford®" or "Ford® SUV" fails to identify any specific vehicle within those families, likewise, FracGuard® (or a FracGuard® series) fails to identify

DM_US:22222685_1

any particular tool within the large families of different tools. (*Id.* ¶3, A13) Specific identification of a particular FracGuard® tool must be by model number. (*Id.* ¶¶2-3, A12-A13).

**B.    HES Exercised No Diligence in Preparing Its Original MON 62 ¶ 3-1 Infringement Contentions—Which Lack Model Numbers**

In April 2008, HES served its MON 62 ¶ 3-1 infringement contentions. These contentions fail to identify a single model number for any Weatherford tool. Instead, HES simply accused "FracGuard®", including any tools that fall under ten broad FracGuard® series or group names[1] (each of which contains numerous different tools with different configurations and functions, as described earlier). Similarly, HES's Rule 3-1(a)(2) claim chart simply compares a single unspecified packer and bridge plug to the asserted claims. (Exh. 12 at A117-A139). Remarkably, while HES failed to specifically identify each Weatherford tool by model number, HES's ¶ 3-1 infringement contentions identify 119 separate ***model numbers of HES's FasDrill® tools*** that HES contends fall under the claims of the '540 patent in compliance with MON 62 ¶ 3-1(a)(6). (Exh. 6 at A15-A31). *See* Rule 3-1(a)(6) ("If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product…practices the claimed invention, the party must identify, ***separately*** for each asserted claim, ***each such apparatus, product***…that incorporates or reflects that particular claim.") (emphasis added).

In February 2009, almost one year after its original Rule 3-1 disclosures, HES served its first interrogatory to Weatherford. For the first time, HES asked Weatherford to identify all

---

[1] (1) FracGuard® Series 300 Integral Ball Frac Plugs, (2) FracGuard® Top-Ball Frac Plugs, (3) FracGuard® High-Flowback Frac Plugs, (4) FracGuard® Dual-Check Pumpdown Roller Frac Plugs, (5) FracGuard® Slim-OD Frac Plugs, (6) FracGuard® Convertible Frac Plugs, (7) Series 300 FracGuard® Bridge Plugs, (8) Series 400 FracGuard® Bridge Plugs, (9) FracGuard® Slim-OD Bridge Plugs, and (10) FracGuard® Convertible Bridge Plugs.

As discussed above, these 10 broad groupings do not identify any specific FracGuard® tool, but instead are akin to family classifications that cover numerous different products. (Exh. 5, McKeachnie Dec. ¶2, A12-A13). Weatherford would not know which tool to provide to a customer that asked for a tool using any of these descriptions. (*Id.*) In addition, these ten groupings do not name all of the broad family classifications that Weatherford has within the FracGuard® line. (*Id.* ¶¶ 2, 7, A12-A14).

FracGuard® model numbers, including the model numbers within the ten broad FracGuard® families identified in HES's April 2008 Rule 3-1 disclosures. However, despite just recently initiating formal discovery to identify Weatherford's model numbers, HES has known for at least six years that Weatherford's different FracGuard® tools are distinguished by model numbers.

Specifically, HES originally sued Weatherford in this Court in 2002 (before MON 62 was in effect) and accused Weatherford's FracGuard® tools generally of infringing HES's patents. During the course of that suit, HES's counsel demanded to inspect several Weatherford composite bridge plugs and packers. HES's counsel identified the specific tools that it desired to inspect *by model number*—as it had to, there being no other way to identify a specific tool. (Exh. 7, A33). Moreover, Weatherford's counsel likewise disclosed specific FracGuard® tools to HES by model number (Exh. 8, A35-A36), and produced 71,728 pages of documents, including detailed technical information relating to specific FracGuard® tools, by model number. (Exh. 21, Culpepper Decl. ¶21, A225). In all, HES requested or Weatherford produced information on at least 38 different FracGuard® model numbers before this Court dismissed the first lawsuit in 2004. (*See* Exh. 21, Culpepper Decl. ¶¶ 21-22, A225; Exh. 7, A33; Exh. 8, A35-A36; Exh. 9, A39-A73).[2]

Years passed after the first suit's dismissal, providing HES additional time to investigate and learn the identity of Weatherford's specific tools and prepare itself for bringing its second suit against Weatherford. HES apparently did nothing during that time because when HES filed its second suit in December 2007 and later supplied its April 2008 Rule 3-1 infringement contentions, it merely used the same FracGuard® tradename and the names of ten broad FracGuard® series of tools to identify the accused products. HES ignored its past practice of

---

[2] Some examples of documents provided to HES in the first lawsuit that identified Weatherford's model numbers include assembly drawings for specific model numbers (Exh. 9, A39-A73).

identifying Weatherford tools by model numbers and all of the model number information produced in the first suit.

HES's lack of diligence, however, did not stop at the filing of its second lawsuit. Over one year ago (May 2008) Weatherford produced its MON 62 ¶ 3-4 documents to HES that, when combined with the production in the first suit, identified 105 specific Weatherford model numbers. (Exh. 21, Culpepper Decl. ¶¶ 21-22, A225). Nonetheless, to the extent HES did not know about these model numbers prior to Weatherford's May 2008 production, HES made no attempt to amend its infringement contentions to add these model numbers, until now. HES has stubbornly taken the position that Rule 3-1(a)(2) and related case law do not require HES to identify each accused Weatherford tool by the model numbers that distinguish each such tool (Exh. 10, HES's Motion (Dkt. No. 113), A75-87), despite conceding that Rule 3-1(a)(6) required HES to identify each HES tool by model number. HES is wrong, and knows it, as evidenced by its eagerness to supplement to now include model numbers without seeking leave of Court.

## C. HES Refused to Move For Leave to Amend Its MON 62 ¶ 3-1 Infringement Contentions

On April 3, 2009, Weatherford objected to supplying HES all FracGuard® model numbers in response to HES's Interrogatory No. 1 because HES had failed to comply with this Court's Rules. During this Court's May 11, 2009 hearing on HES's motion to overrule that objection, the Court suggested that HES should "think about supplementing" its Rule 3-1 infringement contentions with Weatherford's model numbers, although the Court qualified its comments by suggesting that whether HES could or should supplement was an issue not before the Court, and the Court was not going to issue an advisory opinion on that matter. (May 11, 2009 Hearing Transcript). Weatherford believes the clear import of the Court's comments was that no party could unilaterally supplement its contentions without seeking leave to do so from

6

the Court by motion, at which time the issue would be ripe for the Court's decision. Nonetheless, on the day after the hearing, HES's counsel sent Weatherford's counsel a letter stating HES intended to unilaterally supplement its April 2008 Rule 3-1 contentions, which act, HES argued, would not be an expansion or amendment to the original contentions. (Exh 1). Weatherford objected, telling HES it needed to seek Court leave and that any modification had to satisfy Rule 3-7. (Exh. 2).

Nonetheless, on June 17, 2009, HES unilaterally supplemented its Rule 3-1 infringement contentions. (Exh. 11 at A89-A116). HES's June 2009 Rule 3-1 infringement contentions identify for the first time 239 Weatherford model numbers. (Exh. 11 at A105 and A116). While *none* of these model numbers were identified in the April 2008 submission, dozens of these model numbers do not even arguably fall within one of the ten FracGuard® broad families that HES identified in its original disclosure.[3]

As discussed below, HES's unilateral "supplement" is an obvious attempt to circumvent Rule 3-7 ("Amendment of Contentions") by semantics—a position that is not supported by law, amounts to gamesmanship, and, if condoned, would render Rules 3-1 and 3-7 a complete nullity in this District.

---

[3] For example, HES's supplemental Rule 3-1 disclosures include model numbers for eleven of Weatherford's "Shorty" FracGuard® models, which is a separate broad family of FracGuard® tools. (*See* Ex. 11 at A105 and A116) (model numbers: CBP-44-FRAC6K-SHORTY-IB, CBP-45-FRAC6K-SHORTY, CBP-45-FRAC6K-SHORTY-IB, CBP-45-FRAC6K-SHORTY-TB, CBP-46-FRAC6K-SHORTY, CBP-46-FRAC6K-SHORTY-IB, CBP-46-FRAC6K-SHORTY-TB, CFP-45-FRAC6K-SHORTY-TB, CBP-44-PLUG6K-SHORTY, CBP-45-PLUG6K-SHORTY, CBP-45-PLUG6K-SHORTY-SB). HES, however, did not include the FracGuard® Shorty family in its list of ten broad FracGuard® families identified in its April 2008 Rule 3-1 disclosures, just as it did not include several other broad family names within the FracGuard® line of tools. (*See* McKeachnie Decl., Exh. 5, ¶7 at A14).

HES's June 17, 209 supplement argues that all of the model numbers listed in the supplement were identified "by name" in HES's original April 2008 infringement contentions. (Exh. 11). While Weatherford believes that statement is false for all of the model numbers added in the supplement, that statement is especially false for the dozens of model numbers that do not fit within any of the named ten broad FracGuard® families identified in the April 2008 contentions, but fall within the additional FracGuard® families not identified in those disclosures, as illustrated by the "Shorty" example above.

7

## ARGUMENT AND AUTHORITIES

**A.    HES's April 2008 Rule 3-1 Disclosures Are Deficient and Should be Struck**

   **1.    HES Refused to Comply with Rule 3-1's Requirement to Identify Each Accused Product by Model Number If Known**

Rule 3-1 is unambiguous.  It required HES to specifically identify ***each*** accused tool, including with a model number, if known.  MON 62 ¶ 3-1 ("***Each*** product, device, and apparatus must be identified by name or model number, if known.") (emphasis added).  Using a trade name or group names that cover multiple different tools and models does not comply with the Rule because it does not specifically identify ***each*** different tool.  Under the plain reading of the Rule, therefore, if HES knew about Weatherford's specific model numbers (or with diligence could have known them), then the Rule required ***each*** tool be identified by model number.  The word "or" in the Rule does not eradicate the duty to identify each specific tool, which in this case required model numbers.

Significantly, the above view is consistent with the rest of Rule 3-1, which imposes the following additional and specific obligations on HES:

- "***Separately*** for each asserted claim, ***each accused apparatus***, product, device…or other instrumentality ('accused instrumentality') of each opposing party of which the party is aware."

- "This identification must be ***as specific as possible***."

- "A chart identifying specifically and in detail where each element of each asserted claim is found ***within each accused instrumentality***."

- "Failure to comply with the requirements of this paragraph, including the ***requirement of specificity and detail*** in contending infringement, may result in appropriate sanctions, including dismissal."

The emphasis throughout the Rule is identification of ***each*** product with as much specificity and detail as possible.  There is no plausible interpretation of Rule 3-1 that would allow a party to accuse products by groups when the emphasis of the Rule is on "separately" and "each" and "as

8

specific as possible." This is especially true for Weatherford's situation where model numbers are the only basis to identify and distinguish each different tool.

HES cannot credibly argue that its identification of ten **broad FracGuard® family names** on April 1, 2008 was "as specific as possible" when (1) HES itself identified individual Weatherford tools by model number as early as August 19, 2003, when it sought to inspect those specific tools, (2) Weatherford disclosed numerous model numbers to HES from 2003 to 2008, and (3) HES used its own model numbers to specifically identify individual HES tools in its April 2008 Rule 3-1(a)(6) disclosure. This last point illustrates the incongruity and insincerity of HES's position. HES's protestations that Rule 3-1(a)(2) did not require HES to identify each Weatherford tool by model number is clearly belied by HES's own Rule 3-1(a)(6) disclosure. Rule 3-1(a)(6) required HES to "separately for each asserted claim" identify "each" HES product that practices such claim. HES complied with this disclosure obligation by separately listing 119 different HES model numbers within its broad FasDrill® product line. (Exh. 6 at A16-A31). Any suggestion by HES that the Local Rules required HES to separately identify by model number each HES tool, but did not require HES to separately identify by model number each accused Weatherford tool is a perverse reading of the Local Rules and is plainly not correct.

Finally, the seriousness of the separate identification requirement for each accused tool is underscored by the sanction language quoted in ¶ 3-1(b): "[f]ailure to comply with the requirements of this paragraph, **including the requirement of specificity and detail** in contending infringement, may result in **appropriate sanctions, including dismissal**."

### 2. *Davis-Lynch I* and *Davis-Lynch II* Interpret A Virtually Identical Rule In The Eastern District Of Texas And Support Weatherford's Requested Relief

While there apparently is no court in the Northern District of Texas that has yet interpreted Rule 3-1, the Northern District of Texas Rule was patterned after a similar Rule in the

9

Eastern District of Texas, which HES admits is "virtually identical" to MON 62 ¶ 3-1.[4]   (Exh. 10, HES Motion at 7 n.3.)  That being so, the recent *Davis-Lynch I* and *II* decisions involving Weatherford and the virtually identical Eastern District Rule 3-1 are highly persuasive.     *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc*., No. 6:07-CV-559, 2009 WL 81874 (E.D. Tex. Jan. 12, 2009) (hereinafter referred to as *Davis-Lynch I*) (attached as Exh. 13, A140-A146); *Davis-Lynch, Inc. v. Weatherford Int'l, Inc*., No. 6:07-CV-559, slip op. (E.D. Tex. Feb. 20, 2009) (order denying Davis-Lynch motion for reconsideration of *Davis-Lynch I*) (hereinafter referred to as *Davis-Lynch II*) (attached as Exh. 14, A147-A152).

The one-line holding of *Davis-Lynch I* in interpreting E.D. Rule 3-1 supports Weatherford's arguments:

> Rule 3-1(b) requires a party to identify each accused product by name **and** model number, if known….Davis-Lynch has failed to comply with Rule 3-1(b), **which requires a party to identify each accused product by model number if known**.

*Davis-Lynch I*, at \*2, \*5 (emphasis added) (Exh. 13).   Weatherford believes this holding completely eviscerates HES's contention made earlier to this Court that it accused "**all** FracGuard® composite frac plugs and composite bridge plugs, regardless of their model numbers" (Exh. 10, HES Motion at 9) by simply using the FracGuard® tradename or group descriptions.  *Id.* at \*5 ("A party may not blindly accuse every product a defendant produces and expect to narrow its claims at its own convenience."); *Davis-Lynch II*, at 3-4 (Exh. 14) ("Exemplar products may be used to limit the number of claim charts and streamline trial, but the patentee must still list all accused products in its PICs.").

---

[4] MON 62 ¶¶ 3-1 and 3-7 is actually stricter than the analog E.D. Texas patent rules.  For example, MON 62 ¶ 3-1(b), as stated above, states that a patentee's failure to make an infringement contention disclosure with specificity and detail may result in sanctions, including dismissal.  The Eastern District has no equivalent rule.  Further, MON 62 ¶ 3-7 imposes a definition of "good cause" not found in the Eastern District rules.  In MON 62 ¶ 3-7, as stated earlier, a patentee can only seek to amend its Rule 3-1 infringement contentions with additional accused products that were "newly discovered" and "not known to that party prior to the motion [seeking leave to amend the contentions] despite diligence in seeking out same."  This standard is far more stringent than the "good cause" standard discussed in *Davis-Lynch*.

A closer reading of *Davis-Lynch*, however, further shows that this holding should apply to the present dispute, as *Davis-Lynch* and the present case are nearly identical in their factual settings. In *Davis-Lynch* the plaintiff sued Weatherford in 2004 for patent infringement accusing all of Weatherford's "Large Bore Auto Fill Float Collar products,"[5] but specifically identifying only three of them by model number in the plaintiff's E.D. Rule 3-1 infringement contentions. *Davis-Lynch I* at *1, *5 (Exh. 13). Davis-Lynch's first suit was dismissed when Davis-Lynch placed its patent in reexamination. *Id.* Prior to dismissal, however, Weatherford had produced documents to Davis-Lynch showing the identity of 36 model numbers for Weatherford's Large Bore and Mid-Bore Auto Fill Float Collar product lines. *Id.* After Davis-Lynch's patent came out of reexamination, it sued Weatherford again in December 2007 and accused the same three model numbers and all other Large and Mid-Bore Auto Fill Float Collar products. Afterwards, Weatherford produced documents identifying still other model numbers and then later moved to strike Davis-Lynch's infringement contentions or limit them to the three products identified by model number. *Id.* at **1-2.

The Court will recognize the similarity between the facts of *Davis-Lynch* and the present dispute: HES sued Weatherford initially in 2002 accusing Weatherford's FracGuard® tools generally of infringement. While there were no local patent rules in place in the Northern District of Texas during the first suit, Weatherford identified numerous different FracGuard® tools to HES by model number during that suit. This Court then dismissed HES's suit when HES placed the '540 patent in reexam. Years later (December 2007), HES filed suit again against Weatherford on the reexamined patent, but, again, failed to accuse any specific tool by model number (as required by MON 62 ¶ 3-1), instead accusing Weatherford's products by the

---

[5] A sample Weatherford product catalog on float equipment shows that the term "Large Bore Auto-Fill Float Collar" was the broad family name Weatherford used to describe generally all of its products in that line. (Exh. 15 at 12-13. A167-A168).

trade name FracGuard® and by other family group names.  Shortly thereafter Weatherford produced to HES documents identifying most of the other significant model numbers in Weatherford's FracGuard® line of tools.

With the facts between *Davis-Lynch* and the present dispute almost identical, the ruling in favor of Weatherford in *Davis-Lynch* should persuade this Court to rule similarly in Weatherford's favor in the present dispute given the virtual identity of the respective local rules. The court in *Davis-Lynch,* as stated above, ruled that since E.D. Rule 3-1 required identification of accused tools by model numbers, the plaintiff's case was limited to the three tools that Davis-Lynch had identified by model number.  *Davis-Lynch I* at **3-5 (Exh. 13).  The court, however, allowed the plaintiff to fix deficiencies in its infringement contentions for the three products that the plaintiff had identified by model number.  *Id.* at **5-6 (ordering plaintiff to fix its claim chart and other Rule 3-1 contentions found to be deficient for those three models).

The plaintiff in *Davis-Lynch* moved the court to reconsider *Davis-Lynch I*, arguing that Weatherford knew that the suit was about all of its large and mid-bore auto-fill float collar equipment.  *Davis-Lynch II* at 2-3 (Exh. 14).  The court, however, denied that motion, holding that such an argument flies in the face of the local rule and that a patentee cannot satisfy its burden of diligence under the patent rule by accusing representative products or broad categories. *Id.* at **3-4.  Weatherford urges this Court to hold HES to at least the same standard under Rule 3-1 as the patentee in *Davis-Lynch* was held in those rulings lest Weatherford, the defendant in both cases, face divergent rulings on the same issue involving the "virtually identical" patent rule.

12

**B.     HES's Supplemental June 2009 Rule 3-1 Disclosures Should be Struck For Failure to Seek Leave of Court**

**1.     Rule 3-7 Unambiguously Requires HES to Seek Leave to Supplement Its Rule 3-1 Disclosures**

Rule 3-7 cannot be plainer: "Amendment of the preliminary or final infringement contentions, other than as expressly permitted in paragraph 3-6, *may be made only by order of the presiding judge upon a showing of good cause*." MON 62 ¶ 3-7 (emphasis added). HES had no right to unilaterally serve its June 17, 2009 supplemental Rule 3-1 disclosures (Exh. 11). HES's failure to seek leave, despite Weatherford's consistent notices that HES should do so (Exhs. 2, 4), amounts to an admission that HES cannot meet the Rule 3-7 standard for changing its infringement contentions, as discussed later below.

HES's apparent position that it could evade Rule 3-7 by calling its June 2009 disclosure a "supplement" and not an "amendment" is utter gamesmanship. A "supplement" and an "amendment" both mean to modify an original by addition or other modification. (Exh. 16, Webster's Ninth Collegiate Dictionary at A198-A202). Thus, word play does not help HES escape Rule 3-7 because an amendment would include a supplement. Moreover, in *O2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006), the Federal Circuit considered a similar rule—Rule 3-7 of the Northern District of California—titled "*Amendment to Contentions*" and requiring leave of Court to amend or modify preliminary infringement contentions. *Id*. at 1361 n.7 (emphasis added). The patentee in that case, without leave of court, had sent proposed "*supplemental* infringement contentions" to the defendant, who objected. *Id*. at 1361 (emphasis added). The Federal Circuit applied N.D. Cal. Rule 3-7 to the "supplement" and did not parse the different words (amendment, modification, supplementation) to exempt the patentee's supplement from the Rule. *Id*. The Federal Circuit held N.D. Cal. Rule 3-7 required "leave of the court and a showing of 'good cause'" before a supplement would be permitted. *Id*.

13

The patentee failed to meet that standard in *O2 Micro* because it failed to show diligence when it delayed three months before filing a motion for leave to file a supplement from the time it allegedly discovered the basis for needing to supplement. *Id.* at 1366-68.

Other courts have also taken the logical position that any amendment, modification, supplementation, *etc.* to Rule 3-1 infringement contentions requires leave of court. *See, e.g., West v. Jewelry Innovations, Inc.*, No. C 07-1812 JF (HRL), 2008 WL 4532558 at *4 (N.D. Cal. Oct. 8, 2008) (holding that ***even non-substantive amendments*** to infringement contentions must be by stipulation or motion) (attached as Exh. 17, A203-A207); *Berger v. Rossignol Ski Co., Inc.*, No. C05-2523, 2006 WL 2038324, at *1-2 (N.D. Cal. July 17, 2006) (stating that even minor mistakes and typographical errors in a plaintiff's infringement contentions require leave of court to amend) (attached as Exh. 18, A208-A210).

And this makes sense. For HES to be able to self-classify its amendment as a supplement so as to render Rule 3-7 "inapplicable" (Exh. 3) would effectively nullify Rule 3-7 in its entirety in this District. *See STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 852 (E.D. Tex. 2004) (patent rules are orders of the court that the litigants are not free to ignore); *Berger v. Rossignol Ski Co., Inc.*, No. C 05-02523 CRB, 2006 WL 1095914 at *4 (N.D. Cal. April 25, 2006) ("[A] party cannot unilaterally amend the Patent Local Rules.") (Exh. 19, A211-A217); *Informatica Corp. v. Business Objects Data Integration, Inc.*, No. C 02-3378 JSW, 2006 WL 463549 at *1 (N.D. Cal. Feb. 23, 2006) (amendments to infringement contentions served without leave of court under rule 3-7 should be stricken) (attached as Exh. 20, A218-A220).

Moreover, HES's argument that Rule 3-7 is inapplicable because its "supplement" "will not expand or amend the scope of HES's infringement contentions" (Exh. 3) is belied by what HES actually included in its June 17, 2009 supplemental Rule 3-1 disclosures. Specifically, HES's supplemental Rule 3-1 disclosures identify over 200 Weatherford model numbers not

14

identified in the original disclosure (and, as stated earlier, dozens of these do not even arguably fall within one of the 10 FracGuard® broad families that HES identified in its original Rule 3-1 disclosures). This is a clear expansion of the scope of HES's original 3-1 disclosures. Thus, even under HES's flawed interpretation of a permissible "supplement," its June 17, 2009 supplemental Rule 3-1 disclosures required HES to move for leave under Rule 3-7.

### 2. The Real Reason HES Did Not Seek Leave—HES Can Not Meet The Rule 3-7 "Good Cause" Standard

HES has the burden to establish "good cause" and to show diligence under that burden. *O2 Micro*, 467 F.3d at 1366. In this District, "good cause" also requires HES to be able to show that any new products sought to be included in an amendment "***were not known to that party [HES] prior to the motion despite diligence in seeking out same***." Obviously, HES has made no attempt to show good cause because HES has not sought leave from this Court to serve its June 17, 2009 supplement. HES's failure to seek leave only emphasizes its lack of diligence and underscores the near impossibility, at this point, of meeting the Rule 3-7 standard.

Of course, had HES bothered to move for leave to supplement, Weatherford does not believe it could have met its burden in any event. First, as discussed in detail above, HES knew in 2003 that Weatherford's tools were uniquely identified by model numbers, as it requested inspection of individual FracGuard® tools by model number. Second, HES knew of the model numbers produced in Weatherford's document production in the first litigation, which consisted of 71,728 pages of documents, including detailed technical information (such as schematics and brochures) relating to 38 specific FracGuard® tools, by model number. (Exh. 21, Culpepper Decl. ¶21, A225; Exh. 7, A33; Exh. 8, A35-A36; Exh. 9, A39-A73). Certainly, these 38 model numbers should have been listed in HES's original Rule 3-1 disclosures.

Third, Weatherford produced its Rule 3-4 documents to HES in May 2008 that identified an additional 67 specific Weatherford model numbers above and beyond the models identified in 2003-2004. (Exh. 21, Culpepper Decl. ¶22, A225). Thus, unquestionably, as of more than one year ago HES knew the identity of 105 FracGuard® model numbers. In addition, in the ordinary course of Weatherford's document production in this case, Weatherford produced many more model numbers. In short, HES cannot plausibly argue that it did not know (1) Weatherford used model numbers to identify each tool (just as HES does to identify its FasDrill tools, as evidenced in HES's Rule 3-1(a)(6) disclosure), or (2) the identity of most of Weatherford's FracGuard® model numbers for some substantial period of time.

Finally, there is no evidence that HES made any attempt to discover any additional Weatherford model numbers, other than through Interrogatory No. 1, which HES served on Weatherford in February 2009—over one year after it filed this second lawsuit.

With these incontrovertible facts, HES cannot meet the diligence standard under Rule 3-7, should HES ever bother to seek leave from this Court. Moreover, these facts show that HES delayed too long for it to be able to show diligence in:

(1)    conducting informal or formal discovery to identify all Weatherford model numbers after learning in 2003 that Weatherford used model numbers to identify each tool, or

(2)    promptly moving for leave once it discovered additional model numbers it wanted to accuse.

HES has the burden to show diligence in both ways. *See O2 Micro,* 467 F.3d at 1366-68 (party seeking to amend patent infringement contentions must promptly move for leave to amend after discovering the basis for the amendment); *West*, 2008 WL 4532558 at *2 (diligence under the good cause standard requires a party seeking to amend patent rule contentions to show diligence in its search for information that forms the basis of its contentions and diligence in promptly

16

moving for leave once new information is found) (Exh. 17 at A205).  No court that Weatherford is aware of has found that waiting one year after discovering new products before seeking leave to amend contentions to accuse such new products meets the good cause standard of Rule 3-7, or similarly worded patent rules.  *See, e.g., O2 Micro*, 467 F.3d at 1367-68 (Federal Circuit approving district court's ruling that plaintiff lacked diligence in seeking leave to amend infringement contentions after three month delay); *Davis-Lynch I,* 2009 WL 81874 at **3-4 (denying supplementation of newly discovered product numbers from Rule 3-4 production made 6 months earlier) (Exh. 13 at A143-A144); *Computer Acceleration Corp. v. Microsoft Corp*., 503 F. Supp. 2d 819, 824 (E.D. Tex. 2007) (striking plaintiff's infringement contentions based, in part, on a refusal to amend contentions despite having sufficient information to do so for five months).

## **CONCLUSION**

Despite many objections by Weatherford, HES has intentionally disregarded this Court's Rules.  Weatherford asks that the Court enforce its Rules and strike HES's April 2008 Rule 3-1 infringement contentions and its June 2009 Rule 3-1 supplemental contentions for the reasons stated above.

Once these contentions are stricken, there will remain in this case no other accused Weatherford product.  Thus, Weatherford asks that the Court dismiss all of HES's infringement claims against Weatherford.  Dismissal is appropriate for HES's intentional disregard of the Rules and is expressly contemplated by MON 62 ¶ 3-1(b).

DATED:  June 23, 2009                        Respectfully Submitted,

                                            Howrey LLP

                                            By : /s/Stephen L. Lundwall

Stephen H. Cagle
   Texas Bar No. 03591900
Stephen L. Lundwall
   Texas Bar No. 12696980
Eric S. Schlichter
   Texas Bar No. 24007994
1111 Louisiana, 25th Floor
Houston, Texas 77002
Telephone: (713) 787-1400
Facsimile: (713) 787-1440

Robert G. Abrams
   DC Bar No. 211557
Gregory J. Commins, Jr.
   DC Bar No. 435440
Howrey LLP
1299 Pennsylvania Avenue NW
Washington, DC 20004-2402
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

<u>Local Counsel</u>:
Elizabeth D. Whitaker
   Texas Bar No. 22261500
Offices of Elizabeth D. Whitaker, Esq.
5930 Royal Lane
Dallas, Texas 75230
Telephone: (214) 363-9694
Facsimile: (214) 242-2432

ATTORNEYS FOR DEFENDANT
WEATHERFORD INTERNATIONAL, INC.

DM_US:22222685_1

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 23rd day of June, 2009, with a copy of this document via the Court's CM/ECF system. Any other counsel of record will be served by U.S. First Class Mail on this same date.


/s/ Stephen L. Lundwall
Stephen L. Lundwall

DM_US:22222685_1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | |
| Plaintiff, | |
| v. | |
| WEATHERFORD INTERNATIONAL, INC. and BJ SERVICES COMPANY, | CIVIL ACTION NO. 3:07-CV-2144-N |
| Defendants. | Jury Demanded |

## ORDER

On _____, 2009, this Court reviewed Defendant Weatherford International, Inc. ("Weatherford") Motion To Enforce The Local Rules, To Strike Plaintiff's MON 62¶3-1 Infringement Contentions And To Dismiss Plaintiff's Claims Not Supported By Valid Infringement Contentions, and Halliburton's opposition thereto.  This Court finds Weatherford's Motion has merit and should be granted in its entirety.  Accordingly, this Court

STRIKES Halliburton's April 2008 Rule 3-1 Infringement Contentions and Halliburton's June 17, 2009 Supplemental infringement Contentions.

It is further ORDERED that all infringement claims that Halliburton has asserted against any Weatherford product are dismissed for failure to comply with and for disregarding the Patent Rules.

_____

1