IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| HALLIBURTON ENERGY SERVICES, INC., | |
| Plaintiff, | Civil Action No. 3:07-CV-2144-N |
| v. | |
| WEATHERFORD INTERNATIONAL, INC. and BJ SERVICES COMPANY, | JURY TRIAL DEMANDED |
| Defendants. | |

**APPENDIX IN SUPPORT OF
PLAINTIFF HALLIBURTON ENERGY SERVICES, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF ON DECISION
ON APPEAL IN REEXAMINATION OF U.S. PATENT NO. 5,271,468**

| Description | Page |
|---|---|
| *Ex Parte Halliburton Energy Servs., Inc.*, No. 2009-002732 (B.P.A.I. July 2, 2009) ("Decision on Appeal") | A419 - A454 |
| '468 Patent | A455 - A471 |

DATED:  July 13, 2009                    Respectfully submitted,


By : /s/ Maria Wyckoff Boyce
       Maria Wyckoff Boyce
       Texas Bar No. 22095050
       maria.boyce@bakerbotts.com
       Roger Fulghum (pro hac vice)
       Texas Bar No. 00790724
       roger.fulghum@bakerbotts.com
       Amy Pharr Hefley
       Texas Bar No. 24046046
       amy.hefley@bakerbotts.com
       BAKER BOTTS L.L.P.
       One Shell Plaza
       910 Louisiana Street
       Houston, Texas 77002
       Telephone: 713.229.1922
       Facsimile:  713.229.2722


       David M. Genender
       Texas Bar No. 00790757
       david.genender@bakerbotts.com
       BAKER BOTTS L.L.P.
       2001 Ross Avenue
       Dallas, Texas 75201-2980
       Telephone: 214.953.6500
       Facsimile:  214.661.6503


       John Booth
       Texas Bar No. 02650000
       jbooth@ipoftexas.com
       BOOTH ALBANES SCHROEDER LLC
       1601 Elm Street, Suite 1950
       Dallas, Texas 75201-4744
       Telephone: 214.220.0444
       Facsimile:  214.220.0445

ATTORNEYS FOR PLAINTIFF
HALLIBURTON ENERGY SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of July, 2009, a true and correct copy of the foregoing document was served electronically on the following counsel of record:

Stephen H. Cagle
Stephen L. Lundwall
HOWREY LLP
1111 Louisiana, 25th Floor
Houston, Texas 77002

William C. Slusser
Jayme Partridge
SLUSSER WILSON & PARTRIDGE
4270 Three Allen Center
333 Clay Street
Houston, Texas 77002

/s/ Amy Pharr Hefley
Amy Pharr Hefley

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

---

*Ex parte* HALLIBURTON ENERGY SERVICES, INC.,
Patent Owner and Appellant

---

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468[1]
Technology Center 3900

---

Decided:[2]   July 1, 2009

---

Before ROMULO H. DELMENDO, LINDA E. HORNER, and DANIEL S.
SONG, *Administrative Patent Judges.*

DELMENDO, *Administrative Patent Judge.*


DECISION ON APPEAL

Halliburton Energy Services, Inc., the owner of the patent under

reexamination, appeals under 35 U.S.C. §§ 134(b) and 306 from a final

rejection of claims 1-18, 30-38, 40, 41, 73, 76-80, 168, and 169 (Appeal

---

[1]  The patent under reexamination (hereinafter the "'468 Patent") issued to
Streich et al. on December 21, 1993 from Application 07/719,740 filed on
June 21, 1991.
[2]  The two-month time period for filing an appeal or commencing a civil
action, as recited in 37 C.F.R. § 1.304, begins to run from the decided date
shown on this page of the decision.  The time period does not run from the
Mail Date.

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

Brief filed October 22, 2007, hereinafter "App. Br.," 8; Examiner's Answer
mailed May 7, 2008, hereinafter "Ans.," 2; Final Office Action mailed
January 8, 2007).[3] Claims 21-27, 29, 34-41, 43, 46-72, 81-90, 92-100, 106-
110, 112-122, 125, 131-134, 136-153, 156, 157, 161-167, and 170-194 have
been indicated as patentable and/or confirmed.[4] Claims 102-105, the only
other pending claims, have been objected to as depending upon a rejected
base claim but otherwise indicated as allowable (App. Br. 8; Ans. 2). We
have jurisdiction under 35 U.S.C. §§ 134(b) and 306.

We AFFIRM IN PART.

## STATEMENT OF THE CASE

This merged reexamination proceeding arose from a consolidation of
three separate reexamination proceedings, which are: (i) 90/007,108 filed by
Halliburton Company on July 6, 2004; (ii) 90/007,284 filed by BJ Services
Company on November 3, 2004; and (iii) 90/007,289 filed by Stephen H.
Cagle of Howrey Simon Arnold & White, LLP on November 8, 2004
(Decision Merging Reexamination Proceedings mailed May 25, 2006).

According to Appellant, "[t]here are currently no other appeals,
interferences, or judicial proceedings . . . that will directly affect or be
directly affected by or have a bearing" on our Decision (App. Br. 7). It
appears, however, that the '468 Patent has been the subject of a patent

---

[3] *See* Patent Assignment Abstract of Title, which was entered into the
record of this proceeding as "Title Report" on November 16, 2004.
[4] It appears that the Examiner is actually indicating that multiple dependent
claims 34-38, 40, and 41 contain allowable subject matter conditioned on
their dependencies to particular base and/or intervening claims because these
claims have also been rejected.

2

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

infringement action captioned *Halliburton Energy Services, Inc. v. Weatherford Int'l, Inc. and BJ Services Co.*, Civil Action No. 3:02-CV-1347-N (N.D. Tex.) (Reexamination Litigation Search entered November 19, 2004; Request for Reexamination filed July 6, 2004 at 1-2).

We heard oral arguments on May 6, 2009, a written transcript of which has been entered into the electronic record on June 9, 2009.

The '468 Patent states that the "invention relates to downhole tools for use in well bores and methods of drilling such apparatus out of well bores, and more particularly, to such tools having drillable components therein made of non-metallic materials . . . ." (col. 1, ll. 12-16). Figure 2 of the '468 Patent, which depicts a cross section of one non-limiting embodiment of the invention in the form of a drillable packer, is reproduced below:

3

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468



FIG. 2

Figure 2 depicted above shows a drillable packer, wherein the device includes, *inter alia*, center mandrel 22, lock ring housing 24, lock ring 26, retaining band 30, plurality of upper slips 28, wedge retaining ring 34, upper slip wedge 32, generally conical lower slip wedge 46, wedge retaining ring 52, plurality of lower slips 54, retaining band 56, and lower slip support 58 (col. 4, ll. 52-54; col. 5, l. 19 to col. 7, l. 18).

Claims 1 and 30 on appeal read as follows:

1. A well bore process comprising the steps of:

constructing a downhole tool such that a component thereof is made of a non-metallic material, said tool comprising:

4

A422

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

> a center mandrel; and

> a plurality of slips disposed around said mandrel for grippingly engaging a well bore when in a set position;

> wherein, at least one of said mandrel and said plurality of slips is said component;

> positioning said downhole tool into locking, sealing engagement with said well bore; and

> drilling said tool out of said well bore.

> 30. A downhole apparatus for use in a well bore, said apparatus comprising:

> a center mandrel made of a non-metallic material; and

> slip means disposed on said mandrel for grippingly engaging said well bore when in a set position.

(Claims App'x, App. Br. 75 and 78.)

The Examiner relied upon the following as evidence of unpatentability (Examiner's Answer mailed May 7, 2008, hereinafter "Ans.," 3-7):

| Fisher | 1,684,266 | Sep. 11, 1928 |
| Hall | 2,160,804 | May 30, 1939 |

*Is Bad Water Eating Away Your Flood Profits? Baker Introduces Two Packers as Corrosion-Proof as Fiberglass Tubing – Because They Are Fiberglass!*, WORLD OIL, June 1968 (no pagination) (hereinafter "Baker I").

SPECIAL PRODUCTS MANUAL: BAKER PRIME FIBERGLASS PACKER PRODUCT 739-09, BAKER OIL TOOLS, INC. April 25, 1968 (2 pages; hereinafter "Baker II").

Allen M. Shibley, *Glass-Filled Thermoplastics in* HANDBOOK OF COMPOSITES 115-135 (George Lubin ed. 1981) (hereinafter "Shibley").

Document hand-labeled as "FIBERITE" (18-pages; publication date unknown) (hereinafter "FIBERITE").

5

A423

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

Lonnie C. Helms and Bob L. Sullaway, SALES TECHNICAL PAPER: SUCCESSFUL DRILL OUT OF SHOE JOINTS WITH PDC BITS, Halliburton Services (publication date illegible or unknown) (hereinafter "Helms").

Appellant relies on the following documents in support of nonobviousness (Evidence App'x, App. Br. 87-89):

| Morrisett | 2,589,506 | Mar. 18, 1952 |
| Perkins | 3,163,225 | Dec. 29, 1964 |
| Williams | 3,517,742 | Jun. 30, 1970 |
| Watson | 4,858,687 | Aug. 22, 1989 |
| Zimmerman | 6,769,491 B2 | Aug. 3, 2004 |

Declaration of Robert M. Pearson executed on August 20, 2004 (hereinafter "Pearson I Declaration").

Supplemental Declaration of Robert M. Pearson executed on October 23, 2006 (hereinafter "Pearson II Declaration").

Declaration of David Brisco executed on March 14, 2003 (hereinafter "Brisco I Declaration").

Supplemental Declaration of David Brisco executed on May 22, 2003 (hereinafter "Brisco II Declaration").

Declaration of Jack Hulme executed on March 15, 2003 (hereinafter "Hulme Declaration").

Copy of Amendment filed on August 21, 1992 in Application No. 07/719,740.

Eddie E. Smart, *How to Select the Right Packer for the Job*, PETROLEUM ENGINEER 70, 72, 76, 78, 80, unnumbered page (1978).

WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1058 (1984).

R.C. Sweet, C.M. Pumphrey, Jr., and R.J. Funk, *Design Guidelines Help Select Fiber Glass Injection-Well Tubulars*, OIL & GAS JOURNAL 148, 151, 152, 154 (1981).

A DICTIONARY FOR THE PETROLEUM INDUSTRY 27, 175 (3d. ed. 2001).

The Examiner rejected the claims as follows (Ans. 4-7):

6

A424

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

I.  claims 1-4, 6-8, 30-32, 34, 38, 40, 73, 76, 77, 80, 168, and 169
    under 35 U.S.C. § 102(b) as anticipated by Hall;

II. claims 1-6, 30-32, 73, 76, and 80 under 35 U.S.C. § 102(b) as
    anticipated by Fisher;

III. claims 30-34, 38, 41, and 73 under 35 U.S.C. § 102(b) as
     anticipated by Baker I;

IV. claims 30-34, 38, 40, 41, and 73 under 35 U.S.C. § 102(b) as
    anticipated by Baker II;

V.  claims 9, 10, 35-37, 78, and 79 under 35 U.S.C. § 103(a) as
    unpatentable over the combined teachings of Hall, Shibley, and
    FIBERITE; and

VI. claims 11-18 under 35 U.S.C. § 103(a) as unpatentable over the
    combined teachings of Hall and Helms.

## ISSUES

### Rejection I

*Claims 1-4, 6-8, 76, 77, 80, 168, and 169*:

The Examiner finds that Hall describes a process in which a downhole
tool comprising a central, hollow mandrel and a plurality of slips, both of
which can be made of plastic, is positioned within a well bore by a
releasable setting mechanism to form a gripping, sealing engagement and
then removed (after well operation is complete) by drilling the tool out of the
well bore (Ans. 4).

Appellant does not dispute these factual findings (App. Br. 31-32, 38).
Rather, Appellant contends that "Hall does not meet the limitation of claim 1

7

A425

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

requiring the step of 'positioning said downhole tool into locking . . . engagement with said well bore'" (*id.*). Relying on declaration evidence, Appellant asserts that the term "lock" limits the downhole tool to one that "is fixed in place in the well bore and not movable in either axial direction" (*id.* at 32). According to Appellant, "[n]othing in Hall teaches or suggests that its disclosed tool will not move upward in response to pressure forces from below, and no structure is disclosed which would prevent upward movement" (*id.* at 40).

Thus, the dispositive issue arising from the contentions of the Examiner and Appellant is:

Has Appellant shown reversible error in the Examiner's factual finding that Hall describes "positioning [of the] downhole tool into locking . . . engagement with [the] well bore" as required by claim 1?

*Claims 30-32, 34, 38, 40, and 73:*

With respect to the language "slip means . . . for grippingly engaging said well bore" recited in claim 30, the Examiner asserts that the disclosure of the '468 Patent identifies the "slip means" with the phrase "may comprise" without providing a "strict definition," and, therefore, "'slip means' must be given a reasonably broad definition" (Ans. 9). The Examiner then holds that the claimed "slip means" reads on "Hall's tool which includes slips 22, a wedge 21 for forcing the slips into engagement with the well bore, and slip support members 23-26 for supporting the slips in the engaged position" (*id.*). According to the Examiner, the "structure of

8

A426

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

Hall does in fact function in substantially the same manner as the" claimed
"slip means" (*id.*).

Appellant, on the other hand, contends that the claim language
invokes 35 U.S.C. § 112, ¶6, thus limiting the "slip means . . ." to the
disclosed structure and its equivalents (App. Br. 15). Quoting M.P.E.P. §
2181, Appellant urges that the Examiner may not "'[interpret] such a
limitation as reading on any prior art means or step which performed the
function specified in the claim without regard for whether the prior means or
step was equivalent to the corresponding structure, material or acts described
in the specification'" (App. Br. 15). Relying on the disclosure of the '468
Patent, Hall, and the Pearson I Declaration, Appellant argues that Hall does
not describe the claimed "slip means" (*id.* at 42-49).

Thus, the dispositive issue arising from the contentions of the
Examiner and Appellant is:

Has Appellant shown reversible error in the Examiner's conclusion
that the claimed "slip means disposed on said mandrel for grippingly
engaging said well bore" encompasses Hall's elements 21-26?

## *Rejection II*

### *Claims 1-6, 76, and 80:*

It is undisputed that Fisher discloses a drillable tool with segments 10
and a mandrel 14 made out of wood and slidable slips 17 made out of cast
iron (Ans. 4-5; App. Br. 50). The Examiner asserts, however, that the
language "sealing engagement" in claim 1 does not require complete sealing
of the well bore but rather only a "sealing engagement" between the tool and

9

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

the well bore, as shown in Fisher (Ans. 11). Appellant, on the other hand,
contends that this is an incorrect interpretation of the claim language because
the term "sealing engagement" requires a complete seal between the mandrel
and well bore (App. Br. 36, 51). According to Appellant, the relied upon
evidence demonstrates that Fisher cannot provide "sealing engagement" as
required by the claims because Fisher explicitly teaches that segments 10
(which surround the mandrel 14) separate, thus creating axial flow channels
through the plug (*id.* at 51-55).

Thus, the dispositive issue raised by the contentions of the Examiner
and Appellant is:

Has Appellant shown reversible error in the Examiner's conclusion
that the term "sealing engagement" in claim 1 does not require a complete
seal between the mandrel and the well bore as in Fisher?

*Claims 30-32 and 73*:

The Examiner asserts that the term "slip means" in claim 30 must be
given a broad definition because the disclosure of the '468 Patent uses the
phrase "may comprise" in describing the components that make up the "slip
means" (Ans. 13). According to the Examiner, the claimed "slip means"
encompasses the structure shown in Fisher in that "Fisher's tool includes
slips 17, 19, a wedge 14 for forcing the slips into engagement with the well
bore, and a mandrel 10 with shoulders for supporting the slips in the
engaged position" (*id.*).

Appellant counters that the claimed means invokes 35 U.S.C. § 112,
¶6, and that Fisher does not describe the corresponding structure disclosed in

10

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

the '468 Patent or its equivalent (App. Br. 58-60). In particular, Appellant
urges that the components in Fisher asserted to be the wedge and slip
support are not on opposite sides of the slips (*id.* at 59).

Thus, the dispositive issue raised by the contentions of the Examiner
and Appellant is:

Has Appellant shown reversible error in the Examiner's conclusion
that the limitation "slip means disposed on said mandrel for grippingly
engaging said well bore when in a set position" encompasses the slip 17, 19,
mandrel 14, and segments 10 shown in Fisher?

*Rejection III*

*Claims 30-34, 38, 41, and 73*:

The Examiner asserts that Baker I discloses the "slip means" recited
in claim 30 in the form of "slips, a wedge for forcing the slips into
engagement with the well bore, and a setting tool for supporting the slips in
the engaged position" (Ans. 14-15). Appellant, on the other hand, contends
that Baker I has not been shown to disclose such a setting tool (App. Br. 62-
63).

Thus, the dispositive issue arising from the contentions of the
Examiner and Appellant is:

Has Appellant shown reversible error in the Examiner's conclusion
that the "slip means disposed on said mandrel for grippingly engaging said
well bore when in a set position" recited in claim 30 encompasses the
structures described in Baker I, if any?

11

A429

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

## Rejection IV

### Claims 30-34, 38, 40, 41, and 73:

In response to Appellant's argument that the shoulder of the mandrel shown in Baker II does not support the slips as required by the recited "slip means" (App. Br. 68), the Examiner contends that Baker II describes a setting tool, which corresponds to the slip support disclosed in the '468 Patent (Ans. 16). Appellant, on the other hand, contends that while Baker II does disclose a "tubing string" for supporting the tool in the well, it is not part of a "slip means disposed on said mandrel" (App. Br. 68).

Thus, a dispositive issue is:

Has Appellant shown reversible error in the Examiner's conclusion that the "slip means disposed on said mandrel" recited in claim 30 encompasses the structure shown in Baker II?

## Rejection V

### Claims 9, 10, 78, and 79:

The Examiner relies on Shibley and FIBERITE to show that a person having ordinary skill in the art would have found it obvious to make Hall's mandrel or slips out of nylon or Fiberite phenolic material (Ans. 6). Appellant, however, relies on the same arguments offered in connection with the rejection of claim 1 over Hall alone (App. Br. 41, 71, 72).

Thus, the issue is:

Has Appellant shown reversible error in the Examiner's factual finding that Hall describes "positioning [of the] downhole tool into locking .

12

**A430**

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

. . engagement with [the] well bore" as required by claim 1 (from which claims 9 and 10 indirectly depend)?

### *Claims 35-37*:

Again, the Examiner relies on Shibley and FIBERITE to show that a person having ordinary skill in the art would have found it obvious to make Hall's mandrel or slips out of nylon or Fiberite phenolic material (Ans. 6). Appellant, however, relies on the same arguments offered in connection with the rejection of claim 30 over Hall alone (App. Br. 71).

Thus, the issue is:

Has Appellant shown reversible error in the Examiner's conclusion that the claimed "slip means disposed on said mandrel for grippingly engaging said well bore" encompasses Hall's elements 21-26?

### *Rejection VI*

### *Claims 11-18*:

The Examiner relies on Helms to show that a person having ordinary skill in the art would have found it obvious to use a polycrystalline diamond compact (PDC) bit to drill out downhole tools (Ans. 6). Appellant, however, relies on the same arguments offered in connection with the rejection of claim 1 over Hall alone (App. Br. 41, 72).

Thus, the issue is:

Has Appellant shown reversible error in the Examiner's factual finding that Hall describes "positioning [of the] downhole tool into locking . . . engagement with [the] well bore" as required by claim 1?

13

A431

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

## FINDINGS OF FACT

### *Rejection I*

*Claims 1-4, 6-8, 76, 77, 80, 168, and 169*:

1.  Appellant did not direct us to any explicit definition in the '468 Patent of the disputed claim language "locking, sealing engagement with said well bore" (*See generally* App. Br.).

2.  The '468 Patent describes the tools shown in the figures, including those with dual opposed slips, as embodiments or preferred embodiments (col. 4, ll. 49-68; col. 5, ll. 1-7).

3.  Robert M. Pearson, Patent Owner's expert, testifies (Pearson I Declaration, ¶34):

    > The term "lock" is used in the industry to describe well tools that have a mechanism for retaining or "locking in" the setting forces applied to the tool during the setting operation.

4.  Pearson also suggests that a downhole tool that has a mechanism for locking in the setting forces "remains fixed in position in the well and is not movable axially in either direction to a pre-defined design limit" and that they must be removed by drilling (Pearson II Declaration, ¶9; Pearson I Declaration, ¶35).

5.  Pearson states that downhole tools with dual opposed slips are *examples* of mechanisms for locking setting forces (Pearson I Declaration, ¶34).

6.  Pearson opines that Hall's downhole tool is known as a Type II Compression Packer that requires a tubing weight and that

14

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

> "[d]ifferential pressure from below and decreasing temperature
> changes in the tubing string can tend to unset" the tool (Pearson
> II Declaration, ¶¶8, 17).

7.     Appellant did not direct us to any description in the '468 Patent
       that limits the "locking" to withstand any particular pressure
       and/or temperature.

8.     The '468 Patent states that the claimed invention, which uses
       non-metallic parts for ease of drilling, solves a problem of prior
       art tools made of cast iron because "[i]n fact, in the majority of
       wells, the pressure is less than about 5,000 psi, and the
       temperature is less than about 250° F" and such metallic parts
       are unnecessary (col. 2, ll. 37-58).

9.     Hall's Figure 1 is reproduced below:

15

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468



Hall's Figure 1, shown above, depicts a tool for repairing well liners, wherein the tool includes, inter alia, a drillable tubular body 10 that may be formed of various materials such as aluminum, aluminum alloy, cement, glass, suitable plastic materials, and combinations thereof, and a plurality of slips 22 that are toothed to effectively grip the interior of the liner L for the purpose of resisting or preventing downward movement of the sleeves 21 (p. 1, left col., l. 41 to right col., l. 2; p. 1, right col., ll. 10-13; p. 1, right col., l. 50 to p. 2, left col., l. 19; p. 2, right col., ll. 4-7).

16

A434

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

10.  Hall teaches that the tool provides complete sealing (p. 1, left
     col., ll. 19-30; p. 1, left col., l. 51 to right col., l. 2).

11.  Hall discloses that the tool may be removed by drilling (p. 3,
     left col., ll. 69-73).

12.  Hall does not indicate that the well pressures would move the
     tool upward from its engaged or set position but instead
     discloses that "[t]he packing means A and B are such that they
     *remain set and effective indefinitely* and the device does not
     require repair or replacement" (emphasis added; p. 3, left col.,
     ll. 65-68).

13.  Hall teaches that the tool provides "complete sealing" and
     "dependable fluid-tight seals with the interior of the liner or
     casing" (p. 1, left col., ll. 19-22; p. 1, left col., l. 51 to right col.,
     l. 2).

14.  Appellant did not direct us to any experimental evidence
     demonstrating that Hall's tool would move in an upward
     direction in response to forces exerted by typical well pressures.

*Claims 30-32, 34, 38, 40, and 73*:

15.  With respect to the "slip means disposed on said mandrel for
     grippingly engaging said well bore in a set position" recited in
     claim 30, the Specification of the '468 Patent states (col. 3, ll.
     26-28): "The slip means may comprise a wedge engaging a
     plurality of slips with a slip support on the opposite side of the
     slips from the wedge."

17

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

16. The Specification of the '468 Patent describes the action of the slip means as follows (col. 13, ll. 29-33):

> The lock ring housing [24] is thus moved relatively downwardly along mandrel 22 which forces upper slips 28 outwardly and shear screws 36, pushing upper slip wedge 32 downwardly against packer elements 40 and 42.

17. Hall discloses (p. 2, right col., ll. 2-16):

> Sets of slips 22 are engaged on the sleves [sic, sleeves] 21 to be actuated thereby. The outer sides of the slips 22 are toothed to effectively grip the interior of the liner L for the purpose of resisting or preventing downward movement of the sleeves 21. Reins 23 are connected with the slips 22 and extend downwardly therefrom. The lower ends of the reins 23 are secured to shiftable rings 24 surrounding the body 10. Shiftable rings 25 encircle the body 10 below the rings 24 and outwardly bowed leaf springs 26 extend between and connect the adjacent spaced rings 24 and 25. The springs 26 are adapted to frictionally engage the interior of the liner L to resist movement of the associated slips 22. Latch means are provided for initially or normally holding the slips 22 in their down and retracted positions . . . The latches 27 are adapted to engage pins 28 on the body 10 to releasably latch the slips 22 in their down and retracted positions. The latches 27 may be such that they are released from the pins 28 by a partial rotation of the body 10 in a left-hand direction, followed by a downward movement of the body.

*Rejection II*

*Claims 1-6, 76, and 80*:

18. In discussing the context of the invention, the '468 Patent states (col. 1, ll. 18-26):

18

A436

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

> In the drilling or reworking of oil wells, a great
> variety of downhole tools are used. For example, but not
> by way of limitation, it is often desirable to seal tubing or
> other pipe in the casing of the well, such as when it is
> desired to pump cement or other slurry down tubing and
> force the slurry out into a formation. It then becomes
> necessary to seal the tubing with respect to the well
> casing and to prevent fluid pressure of the slurry from
> lifting the tubing out of the well.

19.    Pearson avers that the term "sealing" is understood in the art to
mean "blocking the flow of well fluids around the mandrel"
(Pearson I Declaration, ¶24).

20.    According to Pearson, the tools disclosed in the '468 Patent
"provide a complete seal between the mandrel of the packer and
the well bore and can, therefore, be used to isolate the portion
of a well bore above it from the portion of the well bore below
it" (Pearson II Declaration, ¶9).

21.    Fisher's Figures 1-7 are reproduced below:

19

A437

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468



Fisher's Figures 1-7 depict a bridging plug including, inter alia, segments 10 and mandrel 14 made of wood to facilitate ease of drilling (p. 1, ll. 16-21 and 94-98).

22.    Fisher teaches that "the plug is expanded as a result of the separation of the segments by the mandrel 14 . . . ." (p. 2, ll. 64-68).

20

A438

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

23.   Jack Hulme, Patent Owner's expert, testifies (Hulme
      Declaration, ¶6):

      I personally made an operating scale working
      model of the bridge plug identical to the drawings and
      description contained in the Fisher '266 patent. The
      model I made functions as described in the Fisher '266
      patent except that the patent fails to describe any method
      or structure for sealing between the segments when they
      are in the seated position. By following the description
      in the patent it was impossible for the bridge plug to seal
      between the segments when the tool was moved to the
      position described and illustrated in regard to Figure 2.
      When the Fisher model was moved to the position of
      Figure 2 flow passageways were opened up through the
      length of the tool.

*Claims 30-32 and 73*:

24.   Pearson declares (Pearson II Declaration, ¶22):

      Fisher does not include any structure that is
      identical to the structure disclosed in the '468 patent to
      place and maintain the packer in gripping engagement
      with the well bore when the packer is in the set position.
      In addition, Fisher does not disclose any structure that
      functions in substantially in the same way and does not
      disclose and [sic] structure that achieves substantially the
      same results. *The shoulders of segments 10 adjacent to
      the recess in which the slips are located is not a slip
      support located on the opposite side of the slips from the
      cone.* Nor does the Fisher [tool] have any structure that
      functions in substantially the same way as the slip
      support of the Type VI '468 patent to force the slips up
      the cone. [Emphasis added.]

21

A439

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

25.   Baker I is an advertisement, reproduced below:



The advertisement depicts "two packers as corrosion-proof as fiberglass tubing – because they are fiberglass!"

26.   Pearson states that the Baker I packers do not include the same structure disclosed in the '468 Patent but rather a drag mechanism, which does not perform the gripping function in substantially the same way as the claimed device (Pearson II Declaration, ¶16).

22

A440

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

### *Rejection IV*

*Claims 30-34, 38, 40, 41, and 73:*

27.    Baker II describes an injection packer using fiberglass tubing
       strings (p. 1, "Purpose" section).

28.    Some portions of the drawing in Baker II are illegible.

29.    Pearson states that the Baker II packers do not include the same
       structure disclosed in the '468 Patent but rather a drag
       mechanism, which does not perform the gripping function in
       substantially the same way as the claimed device (Pearson II
       Declaration, ¶16).

### *Rejection V*

*Claims 9, 10, 78, and 79:*

30.    Appellant does not dispute the Examiner's conclusion that it
       would have been obvious to a person having ordinary skill in
       the art to combine Shibley or FIBERITE with Hall in the
       manner stated by the Examiner (App. Br. 71, 72).

*Claims 35-37:*

31.    Shibley and FIBERITE have not been relied upon for the "slip
       means" limitation (Ans. 6).

23

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

### *Rejection VI*

*Claims 11-18*:

32.     Appellant does not dispute the Examiner's conclusion that it
        would have been obvious to a person having ordinary skill in
        the art to combine Helms with Hall in the manner stated by the
        Examiner (App. Br. 72).

### PRINCIPLES OF LAW

On appeal to this Board, Appellant must show that the Examiner
reversibly erred in finally rejecting the claims. *Cf.In re Kahn*, 441 F.3d 977,
985-986 (Fed. Cir. 2006); *see also* 37 C.F.R. § 41.37(c)(1)(vii).

It is well settled that the United States Patent and Trademark Office
(PTO) is obligated to give claim terms their broadest reasonable
interpretation, taking into account any enlightenment by way of definitions
or otherwise found in the specification. *In re ICON Health and Fitness, Inc.*,
496 F.3d 1374, 1379 (Fed. Cir. 2007) ("[T]he PTO must give claims their
broadest reasonable construction consistent with the specification . . .
Therefore, we look to the specification to see if it provides a definition for
claim terms, but otherwise apply a broad interpretation."). "[A]s applicants
may amend claims to narrow their scope, a broad construction during
prosecution creates no unfairness to the applicant or patentee." *ICON
Health*, 496 F.3d at 1379.

The use of means-plus-function language under 35 U.S.C. § 112, ¶6,
requires the PTO to construe the language in light of the disclosed means for

24

A442

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

performing the recited function and equivalents thereof. *In re Donaldson*,
16 F.3d 1189, 1193 (Fed. Cir. 1994) (*en banc*).

### Anticipation

"To anticipate a claim, a prior art reference must disclose every
limitation of the claimed invention, either explicitly or inherently." *In re
Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).

"A patent applicant is free to recite features of an apparatus either
structurally or functionally . . . Yet, choosing to define an element
functionally, *i.e.*, by what it does, carries with it a risk." *Schreiber*, 128 F.3d
at 1478 (internal citation omitted). When the PTO has reason to believe that
a functional limitation asserted to be critical may in fact be an inherent
characteristic of the prior art, it possesses the authority to shift the burden of
proof to applicant or patent owner to prove otherwise. *Id.*; *accord In re
Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990); *In re Best*, 562 F.2d 1252, 1255
(CCPA 1977). Whether the rejection is based on inherency under 35 U.S.C.
§ 102 or on obviousness under 35 U.S.C. § 103, jointly or alternatively, the
burden of proof is the same, and its fairness is evidenced by the PTO's
inability to manufacture products or to obtain and compare prior art
products. *Best*, 562 F.2d at 1255.

### Obviousness

"Section 103 forbids issuance of a patent when 'the differences
between the subject matter sought to be patented and the prior art are such
that the subject matter as a whole would have been obvious at the time the

25

A443

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

## ANALYSIS

### Rejection I

*Claims 1, 76, 77, 80, 168, and 169*:

We select claim 1 as representative of claims 1, 76, 77, 80, 168, and 169, which have been argued together (App. Br. 36-41), and confine our discussion to this selected claim. *See* 37 C.F.R. § 41.37(c)(1)(vii).

Appellant acknowledges, as it must, that "[t]here is no dispute that the tool of Hall is 'positioned within the well bore by a releasable setting mechanism,' 'is removed by drilling the tool out of the well bore,' and includes a non-metallic liner and metallic slips" (App. Br. 38). Rather, it is Appellant's position that Hall does not describe the limitation "locking . . . engagement with said well bore" in claim 1 (*id.*). According to Appellant, the limitation "locking, sealing engagement with a well bore" in claim 1 "requires the tool to be fixed in place in both locked and sealing engagement with the well bore such that it remains in place, holds pressure from either direction, and therefore must be later drilled out" (App. Br. 28).

We agree with Appellant's claim construction in view of the Specification disclosure and the relied upon evidence, namely the Pearson I Declaration (Facts 1, 3, and 4). We disagree, however, that the Appellant showed reversible error in the Examiner's finding (Ans. 8) that Hall describes, either explicitly or inherently, the disputed claim limitation.

26

A444

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

As discussed above, Appellant does not dispute that Hall discloses
constructing a downhole tool including a center mandrel and a plurality of
slips, wherein at least the center mandrel is non-metallic, positioning the
downhole tool in the well bore, and drilling the tool at the time of its
removal from the well (Facts 9-11 and 13). Specifically, Hall teaches that
the plurality of slips 22 are toothed to effectively grip the interior of the liner
L such that downward movement of the sleeves 21 is resisted or prevented
(Fact 9). As to upward movement, nothing in Hall suggests that the tool
may be unset by forces exerted by well pressure (Fact 12). Indeed, Hall
indicates otherwise by disclosing that "[t]he packing means A and B are
such that they *remain set and effective indefinitely* . . ." (emphasis added;
Fact 12) and that drilling may be used to remove the tool (Fact 11).

Under these circumstances, the burden of proof was on Appellant to
provide objective evidence (e.g., experimental evidence) establishing that
Hall's tool would be incapable of "locking, sealing engagement with the
well bore." *Best*, 562 F.2d at 1255. Appellant failed to discharge this
burden with persuasive evidence (Fact 14).

Relying on the Pearson II Declaration (Fact 6), Appellant argues that
Hall's tool is a Type II compression packer that requires a tubing weight and
cannot withstand differential pressures from below (App. Br. 38-40). This
argument is unpersuasive because Pearson's testimony is not based on any
factual evidence such as experimental evidence but instead on speculation.
*In re Lindner*, 457 F.2d 506, 508 (CCPA 1972) ("The affidavit and
specification do contain allegations that synergistic results are obtained with
all the claimed compositions, but those statements are not supported by any

27

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

factual evidence . . . ."). *See also In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984) ("Mere argument or conclusory statements in the specification does not suffice").

Conspicuous by its absence is any meaningful discussion in Pearson's testimony on why Hall's tool cannot withstand pressure from below when Hall teaches that the tool remains set indefinitely and that drilling may be used to remove the tool after the well operation is complete (Facts 3, 4, 11, and 12). Pearson's testimony is further ineffective because it does not take into account the absence of any language in claim 1 that positively excludes unrecited components such as a tubing weight. Along these lines, Pearson also failed to appreciate that claim 1 or the Specification of the '468 Patent fails to limit the tool to withstand any particular pressure (Facts 1, 7, and 8). *In re Self*, 671 F.2d 1344, 1348 (CCPA 1982) ("Many of appellant's arguments fail from the outset because, as the solicitor has pointed out, they are not based on limitations appearing in the claims.").

Appellant appears to be contending that the tool recited in claim 1 requires dual opposed slips (App. Br. 28-29). This contention is without merit. For one thing, claim 1 does not recite dual opposed slips, as aptly pointed out by the Examiner (Ans. 8). Moreover, Pearson himself acknowledges, in a manner consistent with the disclosure of the '468 Patent, that downhole tools with dual opposed slips are merely examples of suitable mechanisms for locking setting forces (Facts 2 and 5).

For these reasons, we uphold the Examiner's rejection as to claims 1, 76, 77, 80, 168, and 169.

28

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

*Claims 2-4 and 6-8*:

Because Appellant has offered the same unpersuasive arguments for claims 2-4 and 6-8 as it has for claim 1, we uphold the rejection of these claims for the same reasons given for claim 1.

*Claims 30-32, 34, 38, 40, and 73*:

We agree with Appellant that the Examiner erred in construing the claimed "slip means disposed on said mandrel for grippingly engaging said well bore" to encompass Hall's elements 21-26. Under 35 U.S.C. § 112, ¶6, the Specification of the '468 Patent would have indicated to one skilled in the relevant art that the claimed "slip means" is a wedge, a plurality of slips, and a slip support on the opposite side of the slips from the wedge as well as equivalents thereof (Fact 15; App. Br. 42). The Examiner has not identified with any reasonable specificity how Hall describes a structure identical to that disclosed in the '468 Patent.

The Examiner also failed to establish that Hall's elements would have been considered an "equivalent" of the claimed "slip means" within the meaning of 35 U.S.C. § 112, ¶6. In the claimed invention, a lock ring housing 24 "move[s] relatively downwardly along mandrel 22 which forces upper slips 28 outwardly and shear screws 36, pushing upper slip wedge 32 downwardly against packer elements 40 and 42" (Fact 16). By contrast, Hall discloses a completely different type of structure that includes, inter alia, springs 26 adapted to frictionally engage the interior of the liner L to resist movement of the associated slips 22 (Fact 17). Nothing substantiates the Examiner's allegation that the prior art means perform the recited

29

A447

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

function in substantially the same manner. Nor has the Examiner offered
any evidence to show that a person having ordinary skill in the art would
have considered Hall's elements to be interchangeable with the elements
shown in the '468 Patent. *See* Supplemental Examination Guidelines for
Determining Applicability of 35 U.S.C. § 112, ¶6, 65 Fed. Reg. 38,510,
38,514-515 (Jun. 16, 2000).

Because the Examiner has erroneously construed the claimed "slip
means" to, in effect, read on *any* structure that performs the recited function,
we cannot affirm the rejection of these claims.

## Rejection II

*Claims 1-6, 76, and 80*:

We agree with Appellant that the Examiner erred by giving the claim
term "sealing engagement" an unreasonable construction. As Pearson
testified, one skilled in the relevant art would have understood the term
"sealing engagement" to mean blocking the flow of well fluids around the
mandrel (i.e., provide complete sealing between the mandrel and the well
bore) (Facts 19-20). We find this testimony to be consistent with the
disclosures of the '468 Patent (Fact 18).

When properly construed, Fisher cannot be said to describe "sealing
engagement" as required by the rejected claims. As Hulme testified, based
on the explicit description found in Fisher, Fisher's tool does not provide
"sealing engagement" as that term would be understood by one skilled in the
relevant art because the separation of segments 10 results in axial flow
channels in a manner contrary to the established meaning of "sealing

30

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

engagement" (Facts 21-23). While the Examiner argues that Fisher's
segments 10 "can fairly be considered to be a 'mandrel'" (Ans. 13), the
Examiner fails to explain how this cures the deficiency with respect to
"sealing engagement."

For these reasons, we cannot affirm the rejection of these claims on
this ground.

*Claims 30-32 and 73*:

Again, the Examiner erred by construing the recited "slip means" in a
manner contrary to 35 U.S.C. § 112, ¶6. As pointed out by Appellant,
Fisher's segments 10 (which the Examiner considers as corresponding to the
wedge disclosed in the '468 Patent) separate and create axial flow channels
(Facts 21-23). The Examiner, however, has not established that the wedge
disclosed in the '468 Patent contains structure that separates in the manner
as described in Fisher. Thus, the Examiner has not established that Fisher's
segments 10 are the same structure disclosed in the '468 Patent. Nor has the
Examiner shown that Fisher's segments 10 are equivalent to the structure
disclosed in the '468 Patent within the meaning of 35 U.S.C. § 112, ¶6,
particularly in view of the significant differences in operation based on
structural differences. Furthermore, the Examiner has not accounted for the
requirement in the claimed "slip means" that the corresponding structure
requires a slip support in the form of a ring that is on the opposite side of the
slips from the wedge (Facts 15, 16, and 24).

For these reasons, we cannot affirm the rejection of these claims.

31

A449

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

*Rejection III*

*Claims 30-34, 38, 41, and 73*:

We must agree with Appellant that the Examiner's rejection is not
well founded. The Examiner has failed to identify any specific disclosure in
the Baker I advertisement that would constitute a description of the claimed
"slip means." For example, the Examiner alleges that Baker I discloses a
setting tool that corresponds to the slip support of the claimed "slip means"
(Ans. 14-15). But the skeletal disclosure of Baker I advertisement fails to
support such an allegation (Fact 25). And, the Examiner ignores the main
arguments in Appellant's rebuttal evidence regarding the absence in the
prior art device of Baker I of the same or similar structure and function as
the claimed invention (Fact 26).

Accordingly, we reverse the Examiner's stated rejection.

*Rejection IV*

*Claims 30-34, 38, 40, 41, and 73*:

The Examiner did not respond, in any meaningful way, to Appellant's
argument that the setting tool (tubing string) of Baker II is not part of a slip
means that is disposed on a mandrel as required by claim 30 (Facts 27 and
28). Nor did the Examiner explain, with reasonable specificity, why the
testimony of Pearson has not been credited (Fact 29).

For these reasons, we find no basis to affirm the Examiner's rejection.

32

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

### Rejection V

#### Claims 9, 10, 78, and 79:

Appellant has not disputed the Examiner's conclusion that it would have been obvious to a person having ordinary skill in the art to combine Shibley or FIBERITE with Hall in the manner as stated by the Examiner (Fact 30). Rather, Appellant has referred to the same arguments made in support of the rejection of claim 1 over Hall alone (App. Br. 71, 72).

Accordingly, we affirm the rejection of these claims for the same reasons given with respect to claim 1 in Rejection I.

#### Claims 35-37:

By the same token, the Examiner has not relied on Shibley or FIBERITE to cure the deficiency in the rejection over Hall alone with respect to the "slip means" (Fact 31).

Accordingly, we reverse the rejection of these claims for the same reasons given with respect to claim 30 in Rejection I.

### Rejection VI

#### Claims 11-18:

Appellant has not disputed the Examiner's conclusion that it would have been obvious to a person having ordinary skill in the art to combine Helms with Hall in the manner as stated by the Examiner (Fact 32). Rather, Appellant relies on the same arguments made in connection with the rejection of claim 1 over Hall alone (App. Br. 72).

33

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

Accordingly, we affirm for the same reasons given wit respect to claim 1 in Rejection I.

## CONCLUSION

On this record, Appellant has failed to demonstrate any error in the Examiner's factual finding that Hall describes "positioning [of the] downhole tool into locking . . . engagement with [the] well bore" as required by claim 1.

Appellant has, however, shown reversible error in the Examiner's conclusion that:

the "slip means disposed on said mandrel for grippingly engaging said well bore" recited in claim 30 encompasses Hall's elements 21-26;

the term "sealing engagement" in claim 1 does not require a complete seal between the mandrel and the well bore as in Fisher;

the limitation "slip means disposed on said mandrel for grippingly engaging said well bore when in a set position" in claim 30 encompasses the slip 17, 19, mandrel 14, and segments 10 shown in Fisher;

the "slip means disposed on said mandrel for grippingly engaging said well bore when in a set position" recited in claim 30 encompasses the structures described in Baker I; and

the "slip means disposed on said mandrel" recited in claim 30 encompasses the structure shown in Baker II.

## DECISION

The Examiner's decision to reject:

34

A452

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

claims 1-4, 6-8, 76, 77, 80, 168, and 169 under 35 U.S.C. § 102(b) as anticipated by Hall is AFFIRMED;

claims 30-32, 34, 38, 40, and 73 under 35 U.S.C. § 102(b) as anticipated by Hall is REVERSED;

claims 1-6, 30-32, 73, 76, and 80 under 35 U.S.C. § 102(b) as anticipated by Fisher is REVERSED;

claims 30-34, 38, 41, and 73 under 35 U.S.C. § 102(b) as anticipated by Baker I is REVERSED;

claims 30-34, 38, 40, 41, and 73 under 35 U.S.C. § 102(b) as anticipated by Baker II is REVERSED;

claims 9, 10, 78, and 79 under 35 U.S.C. § 103(a) as unpatentable over combined teachings of Hall, Shibley, and FIBERITE is AFFIRMED;

claims 35-37 under 35 U.S.C. § 103(a) as unpatentable over the combined teachings of Hall, Shibley, and FIBERITE is REVERSED; and

claims 11-18 under 35 U.S.C. § 103(a) as unpatentable over the combined teachings of Hall and Helms is AFFIRMED.

Accordingly, the Examiner's decision to reject the appealed claims is affirmed in part.

Requests for extensions of time in this *ex parte* reexamination proceeding are governed by 37 C.F.R. § 1.550(c). *See* 37 C.F.R. § 41.50(f).

AFFIRMED-IN-PART


ack

cc:

35

A453

Appeal 2009-002732
Reexamination Controls 90/007,108, 90/007,284, and 90/007,289
Patent 5,271,468

FOR PATENT OWNER:

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER
LLP
901 NEW YORK AVENUE, NW
WASHINGTON DC 20001-4413

FOR THIRD PARTY REQUESTER(S):

J. DEAN LECHTENBERGER
HOWREY SIMON ARNOLD & WHITE LLP
2941 FAIRVIEW PARK DRIVE, BOX 7
FALLS CHURCH, VA 22042

STEPHEN H. CAGLE
HOWREY SIMON ARNOLD & WHITE LLP
2941 FAIRVIEW PARK DRIVE, BOX 7
FALLS CHURCH, VA 22042

36



# United States Patent [19]

## Streich et al.

[11]  **Patent Number:** 5,271,468

[45]  **Date of Patent:** Dec. 21, 1993

US005271468A

[54] **DOWNHOLE TOOL APPARATUS WITH NON-METALLIC COMPONENTS AND METHODS OF DRILLING THEREOF**

[75] Inventors: **Steven G. Streich; Donald F. Hushbeck; Kevin T. Berscheidt; Rick D. Jacobi,** all of Duncan, Okla.

[73] Assignee: **Halliburton Company,** Duncan, Okla.

[21] Appl. No.: **719,740**

[22] Filed: **Jun. 21, 1991**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 515,019, Apr. 26, 1990, abandoned.

[51] Int. Cl.⁵ ............................................. E21B 33/129
[52] U.S. Cl. ...................................... 166/387; 166/118; 166/134; 166/217; 166/376; 175/57
[58] Field of Search ............... 166/376, 387, 118, 135, 166/134, 138, 179, 192, 382, 123, 128, 242; 175/57

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,043,225 | 6/1936 | Armentrout et al. . |
| 2,155,129 | 4/1939 | Hall et al. . |
| 2,205,119 | 6/1940 | Hall et al. . |
| 2,589,506 | 3/1952 | Morrisett . |
| 3,055,424 | 9/1962 | Allen ............................... 166/242 X |
| 3,529,667 | 9/1970 | Malone . |
| 3,910,348 | 10/1975 | Pitts ........................................ 166/134 |
| 4,067,358 | 1/1978 | Streich ........................... 137/624.13 |
| 4,151,875 | 5/1979 | Sullaway ............................ 166/126 |
| 4,300,631 | 11/1981 | Sainato et al. ..................... 166/187 |
| 4,708,202 | 11/1987 | Sukup et al. ...................... 166/123 |
| 4,784,226 | 11/1988 | Wyatt ................................... 166/376 |
| 4,834,184 | 5/1989 | Streich et al. ...................... 166/376 |
| 4,858,687 | 8/1989 | Watson et al. ..................... 166/153 |
| 4,977,958 | 12/1990 | Miller .................................. 166/205 |

### OTHER PUBLICATIONS

Halliburton Sales & Service Catalog No. 43, published in 1985, pp. 2561–2562; 2556–2557; 2427–2434.
Halliburton Services Sales Technical Paper S–8107 entitled "Successful Drill Out Of Shoe Joints With PDC Bits", published in Mar., 1989.
Chapter 4, Fundamentals of Drilling, by John L. Kennedy, PennWell Books, Copyright 1983.
"Molding Compounds Materials Selection Handbook", published by Fiberite Corporation, Copyright, 1986.

*Primary Examiner*—Stephen J. Novosad

[57] **ABSTRACT**

A downhole tool apparatus and methods of drilling the apparatus. The apparatus may include, but is not limited to, packers and bridge plugs utilizing non-metallic components. The material may include engineering grade plastics. The nonmetallic components may include but are not limited to the center mandrel, slips, slip wedges, slip supports and housings, spacer rings, valve housings and valve components. Methods of drilling out the apparatus without significant variations in the drilling speed and weight applied to the drill bit may be employed. Alternative drill bit types, such as polycrystal-line diamond compact (PDC) bits may also be used.

**75 Claims, 6 Drawing Sheets**





FIG. 1

FIG. 2



FIG. 3A

FIG. 3B



FIG. 4A

FIG. 4B

A458





FIG. 6A

FIG. 6B

A460



FIG. 7          FIG. 8

A461

5,271,468

1

## DOWNHOLE TOOL APPARATUS WITH NON-METALLIC COMPONENTS AND METHODS OF DRILLING THEREOF

This application is a continuation-in-part of co-pending application Ser. No. 07/515,019, filed Apr. 26, 1990 now abandoned.

### BACKGROUND OF THE INVENTION

#### 1. Field Of The Invention

This invention relates to downhole tools for use in well bores and methods of drilling such apparatus out of well bores, and more particularly, to such tools having drillable components therein made of non-metallic materials, such as engineering grade plastics.

#### 2. Description Of The Prior Art

In the drilling or reworking of oil wells, a great variety of downhole tools are used. For example, but not by way of limitation, it is often desirable to seal tubing or other pipe in the casing of the well, such as when it is desired to pump cement or other slurry down tubing and force the slurry out into a formation. It then becomes necessary to seal the tubing with respect to the well casing and to prevent the fluid pressure of the slurry from lifting the tubing out of the well. Packers and bridge plugs designed for these general purposes are well known in the art.

When it is desired to remove many of these downhole tools from a well bore, it is frequently simpler and less expensive to mill or drill them out rather than to implement a complex retrieving operation. In milling, a milling cutter is used to grind the packer or plug, for example, or at least the outer components thereof, out of the well bore. Milling is a relatively slow process, but it can be used on packers or bridge plugs having relatively hard components such as erosion-resistant hard steel. One such packer is disclosed in U.S. Pat. No. 4,151,875 to Sullaway, assigned to the assignee of the present invention and sold under the trademark EZ Disposal packer. Other downhole tools in addition to packers and bridge plugs may also be drilled out.

In drilling, a drill bit is used to cut and grind up the components of the downhole tool to remove it from the well bore. This is a much faster operation than milling, but requires the tool to be made out of materials which can be accommodated by the drill bit. Typically, soft and medium hardness cast iron are used on the pressure bearing components, along with some brass and aluminum items. Packers of this type include the Halliburton EZ Drill ® and EZ Drill SV ® squeeze packers.

The EZ Drill SV ® squeeze packer, for example, includes a lock ring housing, upper slip wedge, lower slip wedge, and lower slip support made of soft cast iron. These components are mounted on a mandrel made of medium hardness cast iron. The EZ Drill ® squeeze packer is similarly constructed. The Halliburton EZ Drill ® bridge plug is also similar, except that it does not provide for fluid flow therethrough.

All of the above-mentioned packers are disclosed in Halliburton Services Sales and Service Catalog No. 43, pages 2561-2562, and the bridge plug is disclosed in the same catalog on pages 2556-2557.

The EZ Drill ® packer and bridge plug and the EZ Drill SV ® packer are designed for fast removal from the well bore by either rotary or cable tool drilling methods. Many of the components in these drillable packing devices are locked together to prevent their

2

spinning while being drilled, and the harder slips are grooved so that they will be broken up in small pieces. Typically, standard "tri-cone" rotary drill bits are used which are rotated at speeds of about 75 to about 120 rpm. A load of about 5,000 to about 7,000 pounds of weight is applied to the bit for initial drilling and increased as necessary to drill out the remainder of the packer or bridge plug, depending upon its size. Drill collars may be used as required for weight and bit stabilization.

Such drillable devices have worked well and provide improved operating performance at relatively high temperatures and pressures. The packers and plug mentioned above are designed to withstand pressures of about 10,000 psi and temperatures of about 425° F. after being set in the well bore. Such pressures and temperatures require the cast iron components previously discussed.

However, drilling out iron components requires certain techniques. Ideally, the operator employs variations in rotary speed and bit weight to help break up the metal parts and reestablish bit penetration should bit penetration cease while drilling. A phenomenon known as "bit tracking" can occur, wherein the drill bit stays on one path and no longer cuts into the downhole tool. When this happens, it is necessary to pick up the bit above the drilling surface and rapidly recontact the bit with the packer or plug and apply weight while continuing rotation. This aids in breaking up the established bit pattern and helps to reestablish bit penetration. If this procedure is used, there are rarely problems. However, operators may not apply these techniques or even recognize when bit tracking has occurred. The result is that drilling times are greatly increased because the bit merely wears against the surface of the downhole tool rather than cutting into it to break it up.

While cast iron components may be necessary for the high pressures and temperatures for which they are designed, it has been determined that many wells experience pressures less than 10,000 psi and temperatures less than 425° F. This includes most wells cemented. In fact, in the majority of wells, the pressure is less than about 5,000 psi, and the temperature is less than about 250° F. Thus, the heavy duty metal construction of the previous downhole tools, such as the packers and bridge plugs described above, is not necessary for many applications, and if cast iron components can be eliminated or minimized, the potential drilling problems resulting from bit tracking might be avoided as well.

The downhole tool of the present invention solves this problem by providing an apparatus wherein at least some of the components, including pressure bearing components, are made of non-metallic materials, such as engineering grade plastics. Such plastic components are much more easily drilled than cast iron, and new drilling methods may be employed which use alternative drill bits such as polycrystalline diamond compact bits, or the like, rather than standard tri-cone bits.

### SUMMARY OF THE INVENTION

The downhole tool apparatus of the present invention utilizes non-metallic materials, such as engineering grade plastics, to reduce weight, to reduce manufacturing time and labor, to improve performance through reducing frictional forces of sliding surfaces, to reduce costs and to improve drillability of the apparatus when drilling is required to remove the apparatus from the well bore. Primarily, in this disclosure, the downhole

A462

5,271,468

3

tool is characterized by well bore packing apparatus, but it is not intended that the invention be limited to such packing devices. The non-metallic components in the downhole tool apparatus also allow the use of alternative drilling techniques to those previously known.

In packing apparatus embodiments of the present invention, the apparatus may utilize the same general geometric configuration of previously known drillable packers and bridge plugs while replacing at least some of the metal components with non-metallic materials which can still withstand the pressures and temperatures exposed thereto in many well bore applications. In other embodiments of the present invention, the apparatus may comprise specific design changes to accommodate the advantages of plastic materials and also to allow for the reduced strengths thereof compared to metal components.

In one embodiment of the downhole tool, the invention comprises a center mandrel and slip means disposed on the mandrel for grippingly engaging the well bore when in a set position. In packing embodiments, the apparatus further comprises a packing means disposed on the mandrel for sealingly engaging the well bore when in a set position.

The slip means may comprise a wedge engaging a plurality of slips with a slip support on the opposite side of the slips from the wedge. Any of the mandrel, slips, slip wedges or slip supports may be made of the nonmetallic material, such as plastic. Specific plastics include nylon, phenolic materials and epoxy resins. The phenolic materials may further include any of Fiberite FM4056J, Fiberite FM4005 or Resinoid 1360. The plastic components may be molded or machined.

One preferred plastic material for at least some of these components is a glass reinforced phenolic resin having a tensile strength of about 18,000 psi and a compressive strength of about 40,000 psi, although the invention is not intended to be limited to this particular plastic or a plastic having these specific physical properties. The plastic materials are preferably selected such that the packing apparatus can withstand well pressures less than about 10,000 psi and temperatures less than about 425° F. In one preferred embodiment, but not by way of limitation, the plastic materials of the packing apparatus are selected such that the apparatus can withstand well pressures up to about 5,000 psi and temperatures up to about 250° F.

Most of the components of the slip means are subjected to substantially compressive loading when in a sealed operating position in the well bore, although some tensile loading may also be experienced. The center mandrel typically has tensile loading applied thereto when setting the packer and when the packer is in its operating position.

One new method of the invention is a well bore process comprising the steps of positioning a downhole tool into engagement with the well bore; prior to the step of positioning, constructing the tool such that a component thereof is made of a non-metallic material; and then drilling the tool out of the well bore. The tool may be selected from the group consisting of packers and bridge plugs, but is not limited to these devices.

The component made of non-metallic material, may be one of several such components. The components may be substantially subject to compressive loading. Such components in the tool may include lock ring housings, slips, slip wedges and slip supports. Some

4

components, such as center mandrels of such tools may be substantially subjected to tensile loading.

In another embodiment, the step of drilling is carried out using a polycrystalline diamond compact bit. Regardless of the type of drill bit used, the process may further comprise the step of drilling using a drill bit without substantially varying the weight applied to the drill bit.

In another method of the invention, a well bore process comprises the steps of positioning and setting a packing device in the well bore, a portion of the device being made of engineering grade plastic; contacting the device with well fluids; and drilling out the device using a drill bit having no moving parts such as a polycrystalline diamond compact bit. This or a similar drill bit might have been previously used in drilling the well bore itself, so the process may be said to further comprise the step of, prior to the step of positioning and setting the packer, drilling at least a portion of the well bore using a drill bit such as a polycrystalline diamond compact bit.

In one preferred embodiment, the step of contacting the packer is at a pressure of less than about 5,000 psi and a temperature of less than about 250° F, although higher pressures and temperatures may also be encountered.

It is an important object of the invention to provide a downhole tool apparatus utilizing components made of nonmetallic materials and methods of drilling thereof.

It is another object of the invention to provide a well bore packing apparatus using components made of engineering grade plastic.

An additional object of the invention is to provide a packing apparatus having a valve housing disposed substantially below a lower end of a center mandrel and having a valve in the valve housing below the lower end of the center mandrel.

It is a further object of the invention to provide a packing apparatus which may be drilled by alternate methods to those using standard rotary drill bits.

Additional objects and advantages of the invention will become apparent as the following detailed description of the preferred embodiments is read in conjunction with the drawings which illustrate such preferred embodiments.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 generally illustrates the downhole tool of the present invention positioned in a well bore with a drill bit disposed thereabove.

FIG. 2 illustrates a cross section of one embodiment of a drillable packer made in accordance with the invention.

FIGS. 3A and 3B show a cross section of a second embodiment of a drillable packer.

FIGS. 4A and 4B show a third drillable packer embodiment.

FIGS. 5A and 5B illustrate a fourth embodiment of a drillable packer.

FIGS. 6A and 6B show a fifth drillable packer embodiment with a poppet valve therein.

FIG. 7 shows a cross section of one embodiment of a drillable bridge plug made in accordance with the present invention.

FIG. 8 illustrates a second embodiment of a drillable bridge plug.

5,271,468

| 5 | 6 |

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawings, and more particularly to FIG. 1, the downhole tool apparatus of the present invention is shown and generally designated by the numeral 10. Apparatus 10, which may include, but is not limited to, packers, bridge plugs, or similar devices, is shown in an operating position in a well bore 12. Apparatus 10 can be set in this position by any manner known in the art such as setting on a tubing string or wire line. A drill bit 14 connected to the end of a tool or tubing string 16 is shown above apparatus 10 in a position to commence the drilling out of apparatus 10 from well bore 12. Methods of drilling will be further discussed herein.

### First Packer Embodiment

Referring now to FIG. 2, the details of a first squeeze packer embodiment 20 of apparatus 10 will be described. The size and configuration of packer 20 is substantially the same as the previously mentioned prior art EZ Drill SV ® squeeze packer. Packer 20 defines a generally central opening 21 therein.

Packer 20 comprises a center mandrel 22 on which most of the other components are mounted. A lock ring housing 24 is disposed around an upper end of mandrel 22 and generally encloses a lock ring 26.

Disposed below lock ring housing 24 and pivotally connected thereto are a plurality of upper slips 28 initially held in place by a retaining band 30. A generally conical upper slip wedge is disposed around mandrel 22 adjacent to upper slips 30. Upper slip wedge 32 is held in place on mandrel 22 by a wedge retaining ring 34 and a plurality of screws 36.

Adjacent to the lower end of upper slip wedge 32 is an upper back-up ring 37 and an upper packer shoe 38 connected to the upper slip wedge by a pin 39. Below upper packer shoe 38 are a pair of end packer elements 40 separated by center packer element 42. A lower packer shoe 44 and lower back-up ring 45 are disposed adjacent to the lowermost end packer element 40.

A generally conical lower slip wedge 46 is positioned around mandrel 22 adjacent to lower packer shoe 44, and a pin 48 connects the lower packer shoe to the lower slip wedge.

Lower slip wedge 46 is initially attached to mandrel 22 by a plurality of screws 50 and a wedge retaining ring 52 in a manner similar to that for upper slip wedge 32. A plurality of lower slips 54 are disposed adjacent to lower slip wedge 46 and are initially held in place by a retaining band 56. Lower slips 54 are pivotally connected to the upper end of a lower slip support 58. Mandrel 22 is attached to lower slip support 58 at threaded connection 60.

Disposed in mandrel 22 at the upper end thereof is a tension sleeve 62 below which is an internal seal 64. Tension sleeve 62 is adapted for connection with a setting tool (not shown) of a kind known in the art.

A collet-latch sliding valve 66 is slidably disposed in central opening 21 at the lower end of mandrel 22 adjacent to fluid ports 68 in the mandrel. Fluid ports 68 in mandrel 22 are in communication with fluid ports 70 in lower slip housing 58. The lower end of lower slip support 58 is closed below ports 70.

Sliding valve 66 defines a plurality of valve ports 72 which can be aligned with fluid ports 68 in mandrel 22

when sliding valve 66 is in an open position. Thus, fluid can flow through central opening 21.

On the upper end of sliding valve 66 are a plurality of collet fingers 67 which are adapted for latching and unlatching with a valve actuation tool (not shown) of a kind known in the art. This actuation tool is used to open and close sliding valve 66 as further discussed herein. As illustrated in FIG. 2, sliding valve 66 is in a closed position wherein fluid ports 68 are sealed by upper and lower valve seals 74 and 76.

In prior art drillable packers and bridge plugs of this type, mandrel 22 is made of a medium hardness cast iron, and lock ring housing 24, upper slip wedge 32, lower slip wedge 46 and lower slip support 58 are made of soft cast iron for drillability. Most of the other components are made of aluminum, brass or rubber which, of course, are relatively easy to drill. Prior art upper and lower slips 28 and 54 are made of hard cast iron, but are grooved so that they will easily be broken up in small pieces when contacted by the drill bit during a drilling operation.

As previously described, the soft cast iron construction of prior art lock ring housings, upper and lower slip wedges, and lower slip supports are adapted for relatively high pressure and temperature conditions, while a majority of well applications do not require a design for such conditions. Thus, the apparatus of the present invention, which is generally designed for pressures lower than 10,000 psi and temperatures lower than 425° F., utilizes engineering grade plastics for at least some of the components. For example, the apparatus may be designed for pressures up to about 5,000 psi and temperatures up to about 250° F., although the invention is not intended to be limited to these particular conditions.

In first packer embodiment 20, at least some of the previously soft cast iron components of the slip means, such as lock ring housing 24, upper and lower slip wedges 32 and 46 and lower slip support 58 are made of engineering grade plastics. In particular, upper and lower slip wedges 32 and 46 are subjected to substantially compressive loading. Since engineering grade plastics exhibit good strength in compression, they make excellent choices for use in components subjected to compressive loading. Lower slip support 58 is also subjected to substantially compressive loading and can be made of engineering grade plastic when packer 20 is subjected to relative low pressures and temperatures.

Lock ring housing 24 is mostly in compression, but does exhibit some tensile loading. However, in most situations, this tensile loading is minimal, and lock ring housing 24 may also be made of an engineering grade plastic of substantially the same type as upper and lower slip wedges 32 and 46 and also lower slip housing 58.

Upper and lower slips 28 and 54 may also be of plastic in some applications. Hardened inserts for gripping well bore 12 when packer 20 is set may be required as part of the plastic slips. Such construction is discussed in more detail herein for other embodiments of the invention.

Lock ring housing 24, upper slip wedge 32, lower slip wedge 46, and lower slip housing 58 comprise approximately 75% of the cast iron of the prior art squeeze packers. Thus, replacing these components with similar components made of engineering grade plastics will enhance the drillability of packer 20 and reduce the time and cost required therefor.

Mandrel 22 is subjected to tensile loading during setting and operation, and many plastics will not be acceptable materials therefor. However, some engineer-

5,271,468

7

ing plastics exhibit good tensile loading characteristics, so that construction of mandrel 22 from such plastics is possible. Reinforcements may be provided in the plastic resin as necessary.

## EXAMPLE

A first embodiment packer 20 was constructed in which upper slip wedge 32 and lower slip wedge 46 were constructed by molding the parts to size from a phenolic resin plastic with glass reinforcement. The specific material used was Fiberite 4056J manufactured by Fiberite Corporation of Winona, Minn. This material is classified by the manufacturer as a two stage phenolic with glass reinforcement. It has a tensile strength of 18,000 psi and a compressive strength of 40,000 psi.

The test packer 20 held to 8,500 psi without failure to wedges 32 and 46, more than sufficient for most well bore conditions.

## Second Packer Embodiment

Referring now to FIGS. 3A and 3B, the details of a second squeeze packer embodiment 100 of packing apparatus 10 are shown. While first embodiment 20 incorporates the same configuration and general components as prior art packers made of metal, second packer embodiment 100 and the other embodiments described herein comprise specific design features to accommodate the benefits and problems of using non-metallic components, such as plastic.

Packer 100 comprises a center mandrel 102 on which most of the other components are mounted. Mandrel 102 may be described as a thick cross-sectional mandrel having a relatively thicker wall thickness than typical packer mandrels, including center mandrel 22 of first embodiment 20. A thick cross-sectional mandrel may be generally defined as one in which the central opening therethrough has a diameter less than about half of the outside diameter of the mandrel. That is, mandrel central opening 104 in central mandrel 102 has a diameter less than about half the outside of center mandrel 102. It is contemplated that a thick cross-sectional mandrel will be required if it is constructed from a material having relatively low physical properties. In particular, such materials may include phenolics and similar plastic materials.

An upper support 106 is attached to the upper end of center mandrel 102 at threaded connection 108. In an alternate embodiment, center mandrel 102 and upper support 106 are integrally formed and there is no threaded connection 108. A spacer ring or upper slip support 110 is disposed on the outside of mandrel 102 just below upper support 106. Spacer ring 110 is initially attached to center mandrel 102 by at least one shear pin 112. A downwardly and inwardly tapered shoulder 114 is defined on the lower side of spacer ring 110.

Disposed below spacer ring 110 are a plurality of upper slips 116. A downwardly and inwardly sloping shoulder 118 forms the upper end of each slip 116. The taper of each shoulder 118 conforms to the taper of shoulder 114 on spacer ring 110, and slips 116 are adapted for sliding engagement with shoulder 114, as will be further described herein.

An upwardly and inwardly facing taper 120 is defined in the lower end of each slip 116. Each taper 120 generally faces the outside of center mandrel 102.

A plurality of hardened inserts or teeth 122 preferably are molded into upper slips 116. In the embodiment shown in FIG. 3A, inserts 122 have a generally square

8

cross section and are positioned at an angle so that a radially outer edge 124 protrudes from the corresponding upper slip 116. Outer edge 124 is adapted for grippingly engaging well bore 112 when packer 100 is set. It is not intended that inserts 122 be of square cross section and have a distinct outer edge 124. Different shapes of inserts may also be used. Inserts 122 can be made of any suitable hardened material.

An upper slip wedge 126 is disposed adjacent to upper slips 116 and engages taper 120 therein. Upper slip wedge 126 is initially attached to center mandrel 102 by one or more shear pins 128.

Below upper slip wedge 126 are upper back-up ring 37, upper packer shoe 38, end packer elements 40 separated by center packer element 42, lower packer shoe 44 and lower back-up ring 45 which are substantially the same as the corresponding components in first embodiment packer 20. Accordingly, the same reference numerals are used.

Below lower back-up ring 45 is a lower slip wedge 130 which is initially attached to center mandrel 102 by a shear pin 132. Preferably, lower slip wedge 130 is identical to upper slip wedge 126 except that it is positioned in the opposite direction.

Lower slip wedge 130 is in engagement with an inner taper 134 in a plurality of lower slips 136. Lower slips 136 have inserts or teeth 138 molded therein, and preferably, lower slips 136 are substantially identical to upper slips 116.

Each lower slip 136 has a downwardly facing shoulder 140 which tapers upwardly and inwardly. Shoulders 140 are adapted for engagement with a corresponding shoulder 142 defining the upper end of a valve housing 144. Shoulder 142 also tapers upwardly and inwardly. Thus, valve housing 144 may also be considered a lower slip support 144.

Referring now also to FIG. 3B, valve housing 146 is attached to the lower end of center mandrel 102 at threaded connection 146. A sealing means, such as O-ring 148, provides sealing engagement between valve housing 144 and center mandrel 102.

Below the lower end of center mandrel 102, valve housing 104 defines a longitudinal opening 150 therein having a longitudinal rib 152 in the lower end thereof. At the upper end of opening 150 is an annular recess 154.

Below opening 150, valve housing 144 defines a housing central opening including a bore 156 therein having a closed lower end 158. A plurality of transverse ports 160 are defined through valve housing 144 and intersect bore 156. The wall thickness of valve housing 144 is thick enough to accommodate a pair of annular seal grooves 162 defined in bore 156 on opposite sides of ports 160.

Slidably disposed in valve housing 144 below center mandrel 102 is a sliding valve 164. Sliding valve 164 is the same as, or substantially similar to, sliding valve 66 in first embodiment packer 20. At the upper end of sliding valve 164 are a plurality of upwardly extending collet fingers 166 which initially engage recess 154 in valve housing 144. Sliding valve 164 is shown in an uppermost, closed position in FIG. 3B. It will be seen that the lower end of center mandrel 102 prevents further upward movement of sliding valve 164.

Sliding valve 164 defines a valve central opening 168 therethrough which is in communication with central opening 104 in center mandrel 102. A chamfered shoul-

5,271,468

9

der 170 is located at the upper end of valve central opening 168.

Sliding valve 164 defines a plurality of substantially transverse ports 172 therethrough which intersect valve central opening 168. As will be further discussed herein, ports 172 are adapted for alignment with ports 160 in valve housing 144 when sliding valve 164 is in a downward, open position thereof. Rib 152 fits between a pair of collet fingers 166 so that sliding valve 164 cannot rotate within valve housing 144, thus insuring proper alignment of ports 172 and 160. Rib 152 thus provides an alignment means.

A sealing means, such as O-ring 174, is disposed in each seal groove 162 and provides sealing engagement between sliding valve 164 and valve housing 144. It will thus be seen that when sliding valve 164 is moved downwardly to its open position, O-rings 174 seal on opposite sides of ports 172 in the sliding valve.

Referring again to FIG. 3A, a tension sleeve 174 is disposed in center mandrel 102 and attached thereto to threaded connection 176 Tension sleeve 174 has a threaded portion 178 which extends from center mandrel 102 and is adapted for connection to a standard setting tool (not shown) of a kind known in the art.

Below tension sleeve 174 is an internal seal 180 similar to internal seal 64 in first embodiment 20.

### Third Packer Embodiment

Referring now to FIGS. 4A and 4B, a third squeeze packer embodiment of the present invention is shown and generally designated by the numeral 200. It will be clear to those skilled in the art that third embodiment 200 is similar to second packer embodiment 100 but has a couple of significant differences.

Packer 200 comprises a center mandrel 202. Unlike center mandrel 102 in second embodiment 100, center mandrel 202 is a thin cross-sectional mandrel. That is, it may be said that center mandrel 102 has a mandrel central opening 204 with a diameter greater than about half of the outside diameter of center mandrel 202. It is contemplated that thin cross-sectional mandrels, such as center mandrel 202, may be made of materials having relatively higher physical properties, such as epoxy resins.

The external components of third packer embodiment 200 which fit on the outside of center mandrel 202 are substantially identical to the outer components on second embodiment 100, and therefore the same reference numerals are shown in FIG. 4A. In a manner similar to second embodiment packer 100, center mandrel 202 and upper support 106 may be integrally formed so that there is no threaded connection 108.

The lower end of center mandrel 202 is attached to a valve housing 206 at threaded connection 208. On the upper end of valve housing 206 is an upwardly and inwardly tapered shoulder 210 against which shoulder 104 on lower slips 136 are slidably disposed. Thus, valve housing 206 may also be referred to as a lower slip support 206.

Referring now also to FIG. 4B, a sealing means, such as O-ring 212, provides sealing engagement between center mandrel 202 and valve housing 206.

Valve housing 206 defines a housing central opening including a bore 214 therein with a closed lower end 216. At the upper end of bore 214 is an annular recess 218. Valve housing 204 defines a plurality of substantially transverse ports 220 therethrough which intersect bore 214.

10

Slidably disposed in bore 214 in valve housing 206 is a sliding valve 222. At the upper end of sliding valve 222 are a plurality of collet fingers 224 which initially engage recess 218.

Sliding valve 222 defines a plurality of substantially transverse ports 226 therein which intersect a valve central opening 228 in the sliding valve. Valve central opening 228 is in communication with mandrel central opening 204 in center mandrel 202. At the upper end of central opening 228 is a chamfered shoulder 230.

As shown in FIG. 4B, sliding valve 222 is in an uppermost closed position. It will be seen that the lower end of center mandrel 202 prevents further upward movement of sliding valve 222. When sliding valve 222 is moved downwardly to an open position, ports 226 are substantially aligned with ports 220 in valve housing 206. An alignment means, such as an alignment bolt 232, extends from valve housing 206 inwardly between a pair of adjacent collet fingers 224. A sealing means, such as O-ring 234, provides sealing engagement between alignment bolt 232 and valve housing 206. Alignment bolt 234 prevents rotation of sliding valve 222 within valve housing 204 and insures proper alignment of ports 226 and 220 when sliding valve 222 is in its downwardmost, open position.

The wall thickness of sliding valve 222 is sufficient to accommodate a pair of spaced seal grooves 234 are defined in the outer surface of sliding valve 222, and as seen in FIG. 4B, seal grooves 234 are disposed on opposite sides of ports 220 when sliding valve 222 is in the open position shown. A sealing means, such as seal 236, is disposed in each groove 234 to provide sealing engagement between sliding valve 222 and bore 214 in valve housing 206.

Referring again to FIG. 4A, a tension sleeve 238 is attached to the upper end of center mandrel 202 at threaded connection 240. A threaded portion 242 of tension sleeve 238 extends upwardly from center mandrel 202 and is adapted for engagement with a setting apparatus (not shown) of a kind known in the art.

An internal seal 244 is disposed in the upper end of center mandrel 202 below tension sleeve 238.

### Fourth Packer Embodiment

Referring now to FIGS. 5A and 5B, a fourth squeeze packer embodiment is shown and generally designated by the numeral 300. As illustrated, fourth embodiment 300 has the same center mandrel 202, and all of the components positioned on the outside of center mandrel 202 are identical to those in the second and third packer embodiments. Therefore, the same reference numerals are used for these components. Tension sleeve 238 and internal seal 244 positioned on the inside of the upper end of center mandrel 202 are also substantially identical to the corresponding components in third embodiment packer 200 and therefore shown with the same reference numerals.

The difference between fourth packer embodiment 300 and third packer embodiment 200 is that in the fourth embodiment shown in FIGS. 5A and 5B, the lower end of center mandrel 202 is attached to a different valve housing 302 at threaded connection 304. Shoulder 140 on each lower slip 136 slidingly engages an upwardly and inwardly tapered shoulder 306 on the top of valve housing 302. Thus, valve housing 302 may also be referred to as lower slip support 302.

5,271,468

11
12

Referring now to FIG. 5B, a sealing means, such as O-ring 308, provides sealing engagement between the lower end of center mandrel 202 and valve housing 302.

Valve housing 302 defines a housing central opening including a bore 310 therein with a closed lower end 312. A bumper seal 314 is disposed adjacent to end 312.

Valve housing 302 defines a plurality of substantially transverse ports 316 therethrough which intersect bore 310. A sliding valve 318 is disposed in bore 310, and is shown in an uppermost, closed position in FIG. 5B. It will be seen that the lower end of center mandrel 202 prevents upward movement of sliding valve 318. Sliding valve 318 defines a valve central opening 320 therethrough which is in communication with mandrel central opening 204 in center mandrel 202. At the upper end of valve central opening 320 in sliding valve 318 is an upwardly facing chamfered shoulder 322.

On the outer surface of sliding valve 318, a pair of spaced seal grooves 324 are defined. In the closed position shown in FIG. 5B, seal grooves 324 are on opposite sides of ports 316 in valve housing 302. A sealing means, such as seal 326, is disposed in each seal groove 324 and provides sealing engagement between sliding valve 318 and bore 310 in valve housing 302.

When sliding valve 318 is opened, as will be further described herein, the sliding valve 318 is moved downwardly such that upper end 328 thereof is below ports 316 in valve housing 302. Downward movement of sliding valve 318 is checked when lower end 330 thereof contacts bumper seal 314. Bumper seal 314 is made of a resilient material which cushions the impact of sliding valve 318 thereon.

### Fifth Packer Embodiment

Referring now to FIGS. 6A and 6B, a fifth squeeze packer embodiment is shown and generally designated by the numeral 400. As illustrated, fifth packer embodiment 400 incorporates the same thick cross-sectional center mandrel 102 as does second packer embodiment 100 shown in FIGS. 3A and 3B. Also, the external components positioned on center mandrel 102 are the same as in the second, third and fourth packer embodiments, so the same reference numerals will be used. Further, tension sleeve 174 and internal seal 180 in second embodiment 100 are also incorporated in fifth embodiment 400, and therefore these same reference numerals have also been used.

The difference between fifth packer embodiment 400 and second embodiment 100 is that the lower end of center mandrel 102 is attached to a lower slip support 402 at threaded connection 404. Shoulders 140 on lower slips 136 slidingly engage an upwardly and inwardly tapered shoulder 406 at the upper end of lower slip support 402.

Referring now to FIG. 6B, a sealing means, such as O-ring 408, provides sealing engagement between the lower end of center mandrel 102 and lower slip support 402.

Lower slip support 402 defines a first bore 410 therein and a larger second bore 412 spaced downwardly from the first bore. A tapered seat surface 414 extends between first bore 410 and second bore 412.

The lower end of lower support 402 is attached to a valve housing 416 at threaded connection 418. Valve housing 416 defines a first bore 420 and a smaller second bore 422 therein. An upwardly facing annular shoulder 424 extends between first bore 420 and second bore 422. Below second bore 422, valve housing 416 defines a

third bore 426 therein with an internally threaded surface 428 forming a port at the lower end of the valve housing.

Disposed in first bore 420 in valve housing 416 is a valve body 430 with an upwardly facing annular shoulder 432 thereon. An elastomeric valve seal 434 and a valve spacer 436, which provides support for the valve seal, are positioned adjacent to shoulder 432 on valve body 430. A conical valve head 438 is positioned above valve seal 434 and is attached to valve body 430 at threaded connection 440. It will be seen by those skilled in the art that valve head 438 is adapted for sealing engagement with seat surface 414 in lower slip support 402 when valve body 430 is moved upwardly.

The lower end of valve body 430 is connected to a valve holder 442 by one or more pins 444. Valve holder 442 is disposed in second bore 422 of valve housing 416. A sealing means, such as O-ring 446 provides sealing engagement between valve holder 442 and valve housing 416.

Above shoulder 424 in valve housing 416, valve body 430 has a radially outwardly extending flange 448 thereon. A biasing means, such as spring 450, is disposed between flange 448 and shoulder 424 for biasing valve body 430 upwardly with respect to valve housing 416.

Valve holder 442 defines a first bore 452 and a smaller second bore 454 therein with an upwardly facing chamfered shoulder 456 extending therebetween. A ball 458 is disposed in valve holder 442 and is adapted for engagement with shoulder 456.

### First Bridge Plug Embodiment

Referring now to FIG. 7, a first bridge plug embodiment of the present invention is shown and generally designated by the numeral 500. First bridge plug embodiment 500 comprises the same center mandrel 102 and the external components positioned thereon as does the second packer embodiment 100. Therefore, the reference numerals for these components shown in FIG. 7 are the same as in FIG. 3A.

The lower end of center mandrel 102 in first bridge plug embodiment 500 is connected to a lower slip support 502 at threaded connection 504. An upwardly and inwardly tapered shoulder 506 on lower slip support 502 engages shoulders 140 on lower slips 136. As with the other embodiments, slips 136 are adapted for sliding along shoulder 506.

Lower slip support 502 defines a bore 508 therein which is in communication with mandrel central opening 104 in center mandrel 102.

A bridging plug 510 is disposed in the upper portion of mandrel central opening 104 in center mandrel 102 and is sealingly engaged with internal seal 180. A radially outwardly extending flange 512 prevents bridging plug 510 from moving downwardly through center mandrel 102.

Above bridging plug 510 is tension sleeve 174, previously described for second packer embodiment 100.

### Second Bridge Plug Embodiment

Referring now to FIG. 8, a second bridge plug embodiment of the present invention is shown and generally designated by the numeral 600. Second bridge plug embodiment 600 uses the same thin cross-sectional mandrel 202 as does third packer embodiment 200 shown in FIG. 4A. Also, the external components positioned on center mandrel 202 are the same as previously de-

5,271,468

13

scribed, so the same reference numerals are used in FIG. 8.

In second bridge plug embodiment 600, the lower end of center mandrel 202 is attached to the same lower slip support 502 as, first bridge plug embodiment 500 at 5 threaded connection 602. It will be seen that bore 508 in lower slip support 502 is in communication with mandrel central opening 204 in center mandrel 202.

A bridging plug 604 is positioned in the upper end of mandrel central opening 204 in center mandrel 202. A 10 shoulder 608 in central opening 204 prevents downward movement of bridging plug 604. A sealing means, such as a plurality of O-rings 606, provide sealing engagement between bridging plug 604 and center mandrel 202.

Tension sleeve 238, previously described, is positioned above bridging plug 604.

### Setting And Operation Of The Apparatus

Downhole tool apparatus 10 is positioned in well 20 bore 12 and set into engagement therewith in a manner similar to prior art devices made with metallic components. For example, a prior art apparatus and setting thereof is disclosed in the above-referenced U.S. Pat. No. 4,151,875 to Sullaway. This patent is incorporated 25 herein by reference.

For first packer embodiment 20, the setting tool pulls upwardly on tension sleeve 62, and thereby on mandrel 22, while holding lock ring housing 24. The lock ring housing is thus moved relatively downwardly along 30 mandrel 22 which forces upper slips 28 outwardly and shears screws 36, pushing upper slip wedge 32 downwardly against packer elements 40 and 42. Screws 50 are also sheared and lower slip wedge 46 is pushed downwardly toward lower slip support 58 to force 35 lower slips 54 outwardly. Eventually, upper slips 28 and lower slips 54 are placed in gripping engagement with well bore 12 and packer elements 40 and 42 are in sealing engagement with the well bore. The action of upper slips 28 and 54 prevent packer 20 from being unset. As 40 will be seen by those skilled in the art, pressure below packer 20 cannot force the packer out of well bore 12, but instead, causes it to be even more tightly engaged.

Eventually, in the setting operation, tension sleeve 62 is sheared so the setting tool may be removed from the 45 well bore.

The setting of second packer embodiment 100, third packer embodiment 200, fourth packer embodiment 300, fifth packer embodiment 400, first bridge plug embodiment 500 and second bridge plug embodiment 50 600 is similar to that for first packer embodiment 20. The setting tool is attached to either tension sleeve 174 or 238. During setting, the setting tool pushes downwardly on upper slip support 110, thereby shearing shear pin 112. Upper slips 116 are moved downwardly 55 with respect to upper slip wedge 126. Tapers 120 and upper slips 116 slide along upper slip wedge 126, and shoulders 118 on upper slips 116 slide along shoulder 114 on upper slip support 110. Thus, upper slips 116 are moved radially outwardly with respect to center mandrel 102 or 202 such that edges 124 of inserts 122 grip- 60 pingly well bore 12.

Also during the setting operation, upper slip wedge 126 is forced downwardly, shearing shear pin 128. This in turn causes packer elements 40 and 42 to be squeezed 65 outwardly into sealing engagement with the well bore.

The lifting on center mandrel 102 or 202 causes the lower slip support (valve housing 144 in first packer

14

embodiment 100, valve housing 206 in second packer embodiment 200, valve housing 302 in fourth packer embodiment 300, lower slip support 402 in fifth packer embodiment 400, and lower slip support 502 in first bridge plug embodiment 500 and second bridge plug embodiment 600) to be moved up and lower slips 136 to be moved upwardly with respect to lower slip wedge 130. Tapers 134 in lower slips 136 slide along lower slip wedge 130, and shoulders 140 on lower slips 136 slide along the corresponding shoulder 142, 210, 306, 406, or 506. Thus, lower slips 136 are moved radially outwardly with respect to center mandrel 102 or 202 so that inserts 138 grippingly engage well bore 12.

Also during the setting operation, lower slip wedge 130 is forced upwardly, shearing shear pin 132, to provide additional squeezing force on packer elements 40 and 42.

The engagement of inserts 122 in upper slips 116 and inserts 138 in lower slips 136 with well bore 12 prevent packers 100, 200, 300, 400 and bridge plugs 500, 600 from coming unset.

Once any of packers 20, 100, 200, 300, 400 are set, the valves therein may be actuated in a manner known in the art. Sliding valve 164 in second packer embodiment 126, and sliding valve 22 in third packer embodiment 200 are set in a similar, if not identical manner. Sliding valve 318 in fourth packer embodiment 300 is also set in a similar manner, but does not utilize collets, nor is alignment of sliding valve 318 with respect to ports 316 in valve housing 302 important. Sliding valve 318 is simply moved below ports 316 to open the valve. Bumper seal 314 cushions the downward movement of sliding valve 318, thereby minimizing the possibility of damage to sliding valve 318 or valve housing 302 during an opening operation.

In fifth packer embodiment 400, the valve assembly comprising valve body 432, valve seal 434, valve spacer 436, valve head 438 and valve holder 442 is operated in a manner substantially identical to that of the Halliburton EZ Drill ® squeeze packer of the prior art.

### Drilling Out The Packer Apparatus

Drilling out any embodiment of downhole tool 10 may be carried out by using a standard drill bit at the end of tubing string 16. Cable tool drilling may also be used. With a standard "tri-cone" drill bit, the drilling operation is similar to that of the prior art except that variations in rotary speed and bit weight are not critical because the nonmetallic materials are considerably softer than prior art cast iron, thus making tool 10 much easier to drill out. This greatly simplifies the drilling operation and reduces the cost and time thereof.

In addition to standard tri-cone drill bits, and particularly if tool 10 is constructed utilizing engineering grade plastics for the mandrel as well as for slip wedges, slips, slip supports and housings, alternate types of drill bits may be used which would be impossible for tools constructed substantially of cast iron. For example, polycrystalline diamond compact (PDC) bits may be used. Drill bit 14 in FIG. 1 is illustrated as a PDC bit. Such drill bits have the advantage of having no moving parts which can jam up. Also, if the well bore itself was drilled with a PDC bit, it is not necessary to replace it with another or different type bit in order to drill out tool 10.

While specific squeeze packer and bridge plug configurations of packing apparatus 10 has been described herein, it will be understood by those skilled in the art

A468

5,271,468

**15**

that other tools may also be constructed utilizing components selected of non-metallic materials, such as engineering grade plastics.

Additionally, components of the various packer embodiments may be interchanged. For example, thick cross-sectional center mandrel 102 may be used with valve housing 206 in second packer embodiment 200 or valve housing 302 in fourth packer embodiment 300. Similarly, thin cross-sectional center mandrel 202 could be used with valve body 144 in second packer embodiment 100 or lower slip support 402 and valve housing 416 in fifth packer embodiment 400. The intent of the invention is to provide devices of flexible design in which a variety of configurations may be used.

It will be seen, therefore, that the downhole tool packer apparatus and methods of drilling thereof of the present invention are well adapted to carry out the ends and advantages mentioned as well as those inherent therein. While presently preferred embodiments of the apparatus and various drilling methods have been discussed for the purposes of this disclosure, numerous changes in the arrangement and construction of parts and the steps of the methods may be made by those skilled in the art. In particular, the invention is not intended to be limited to squeeze packers or bridge plugs. All such changes are encompassed within the scope and spirit of the appended claims.

What is claimed is:

1. A well bore process comprising the steps of:
   constructing a downhole tool such that a component thereof is made of a non-metallic material, said tool comprising:
   a center mandrel; and
   a plurality of slips disposed around said mandrel for grippingly engaging a well bore when in a set position;
   wherein, at least one of said mandrel and said plurality of slips is said component;
   positioning said downhole tool into locking, sealing engagement with said well bore; and
   drilling said tool out of said well bore.

2. The process of claim 1 wherein said downhole tool is selected from the group consisting of packers and bridge plugs.

3. The process of claim 1 wherein said component is subject to compressive loading.

4. The process of claim 1 wherein said component is subject to tensile loading.

5. The process of claim 1 wherein said center mandrel defines a central opening therein having a diameter less than about half an outside diameter of said center mandrel.

6. The process of claim 1 wherein said center mandrel defines a central opening therein having a diameter greater than about half the outside diameter of said center mandrel.

7. The process of claim 1 wherein said non-metallic material is plastic.

8. The process of claim 7 wherein said component is molded.

9. The process of claim 7 wherein said plastic is selected from the group consisting of nylon, phenolic material or epoxy resin.

10. The process of claim 9 wherein said plastic is a phenolic material and is selected from the group consisting of Fiberite FM4056J, Fiberite FM4005 or Resinoid 1360.

**16**

11. The process of claim 1 wherein said step of drilling is carried out with a polycrystalline diamond compact bit.

12. The process of claim 1 wherein said step of drilling is carried out using a drill bit without substantially varying weight applied to said drill bit.

13. A well bore process comprising the steps of:
   positioning and setting a packing device into locked, sealing engagement with a well bore, a portion of said device being made of engineering grade plastic;
   contacting said device with well fluids; and
   drilling said said device using a polycrystalline diamond compact bit.

14. The process of claim 13 wherein said step of contacting is at a temperature of less than about 250° F.

15. The process of claim 13 wherein said step of contacting is at a pressure of less than about 5,000 psi.

16. The process of claim 13 wherein said portion of said device is at least one of a housing, slip, slip wedge, slip support, and mandrel thereof.

17. The process of claim 13 further comprising the step of, prior to said step of positioning and setting said device, drilling at least a portion of said well bore using a polycrystalline diamond compact bit.

18. The process of claim 13 wherein said step of drilling is carried out without substantially varying weight applied to said bit.

19. A downhole apparatus for use in a well bore, said apparatus comprising:
   a center mandrel; and
   slip means disposed on said mandrel for grippingly engaging said well bore when in a set position, said slip means comprising:
   a slip wedge made of a non-metallic material; and
   slips made of non-metallic material.

20. The apparatus of claim 19 characterized as a packing apparatus and further comprising packing means disposed on said mandrel for sealingly engaging said well bore when in a set position.

21. The apparatus of claim 20 wherein said slip means is an upper slip means disposed above said packing means and further comprising a lower slip means disposed below said packing means, said lower slip means comprising another slip wedge made of a non-metallic material.

22. The apparatus of claim 19 wherein said slip means comprises a slip support made of a non-metallic material.

23. The apparatus of claim 19 further comprising a plurality of hardened inserts molded into said material of said slips.

24. The apparatus of claim 19 wherein said non-metallic material is an engineering grade plastic.

25. The apparatus of claim 24 wherein said plastic is nylon.

26. The apparatus of claim 24 wherein said plastic is a phenolic material.

27. The apparatus of claim 26 wherein said phenolic material is one of Fiberite FM4056J, Fiberite FM4005 and Resinoid 1360.

28. The apparatus of claim 24 wherein said plastic is an epoxy resin.

29. The apparatus of claim 24, wherein said wedge is molded to size.

30. A downhole apparatus for use in a well bore, said apparatus comprising:
   a center mandrel made of a non-metallic material; and

5,271,468

17

slip means disposed on said mandrel for grippingly engaging said well bore when in a set position.

31. The apparatus of claim 30 characterized as a packing apparatus and further comprising packing means disposed on said mandrel for sealingly engaging said well bore when in a set position.

32. The apparatus of claim 30 wherein said slip means comprises a wedge made of a non-metallic material.

33. The apparatus of claim 30 wherein said slip means comprises slips made of a non-metallic material.

34. The apparatus of claim 30 wherein said non-metallic material is an engineering grade plastic.

35. The apparatus of claim 34 wherein said plastic is nylon.

36. The apparatus of claim 34 wherein said plastic is a phenolic material.

37. The apparatus of claim 36 wherein said phenolic material is Fiberite FM4056J.

38. The apparatus of claim 34 wherein said mandrel is molded to size.

39. The apparatus of claim 34 wherein said mandrel has a central opening defined therethrough having a diameter less than about half an outside diameter of said mandrel.

40. The apparatus of claim 34 wherein said mandrel has a central opening defined therethrough having a diameter greater than about half an outside diameter of said mandrel.

41. The apparatus of claim 34 wherein said plastic is an epoxy resin.

42. A downhole apparatus for use in a well bore, said apparatus comprising:
   a center mandrel; and
   a plurality of slips disposed around said mandrel for grippingly engaging said well bore when in a set position, said slips being made of a non-metallic material.

43. The apparatus of claim 42 characterized as a packing apparatus and further comprising packing means disposed on said mandrel for sealingly engaging said well bore when in a set position; and
   wherein some of said slips are disposed above said packing means and some of said slips are disposed below said packing means.

44. The apparatus of claim 42 further comprising a wedge disposed adjacent to said slips, said wedge being made of a non-metallic material.

45. The apparatus of claim 42 wherein said mandrel is made of a non-metallic material.

46. The apparatus of claim 42 wherein said non-metallic material is an engineering grade plastic.

47. The apparatus of claim 46 wherein said plastic material is nylon.

48. The apparatus of claim 46 wherein said plastic is a phenolic material.

49. The apparatus of claim 48 wherein said phenolic material is Fiberite FM4056J.

50. The apparatus of claim 46 wherein said plastic is an epoxy resin.

51. The apparatus of claim 46 wherein said slips are molded of said plastic material.

52. The apparatus of claim 51 further comprising a plurality of hardened inserts molded into said plastic.

53. The apparatus of claim 52 wherein each of said inserts has an edge adapted for grippingly engaging said well bore.

54. A packing apparatus for use in a well bore, said apparatus comprising:

18

a mandrel made of a non-metallic material;
an upper slip support disposed on said mandrel and made of a non-metallic material;
a plurality of upper slips disposed around said mandrel and substantially made of a non-metallic material;
packing means disposed on said mandrel below said upper slips for sealingly engaging said well bore when in a set position;
a plurality of lower slips disposed around said mandrel below said packing means and substantially made of a non-metallic material; and
a lower slip support attached to said mandrel and made of a non-metallic material.

55. The apparatus of claim 54 wherein said non-metallic material of any of said mandrel, upper slip support, upper slips, lower slips and lower slip support is an engineering grade plastic.

56. The apparatus of claim 55 wherein said plastic is nylon.

57. The apparatus of claim 56 wherein said phenolic material is one of Fiberite FM4056J, Fiberite FM4005 and Resinoid 1360.

58. The apparatus of claim 55 wherein said plastic is a phenolic material.

59. The apparatus of claim 55 wherein said plastic is an epoxy resin.

60. The apparatus of claim 55 wherein any of said mandrel, upper slip support upper slips, lower slips and lower slip support may be molded to size.

61. The apparatus of claim 59 wherein:
   said center mandrel defines a mandrel central opening therethrough;
   said lower slip support is characterized by a valve housing defining a housing central opening therein and a housing port in communication with said housing central opening; and
   further comprising a valve disposed in said housing central opening and providing communication between said port and said mandrel central opening when in an open position, said valve being disposed below a lower end of said mandrel.

62. The apparatus of claim 61 wherein upward movement of said valve is prevented by said mandrel.

63. The apparatus of claim 61 wherein said valve is a sliding valve defining a valve central opening therein and a valve port in communication with said valve central opening, wherein said valve port and said housing port are substantially aligned when said valve is in an open position.

64. The apparatus of claim 63 wherein said valve defines a seal groove therein; and
   further comprising sealing means disposed in said seal groove for providing sealing engagement between said valve and said valve housing.

65. The apparatus of claim 63 wherein said valve housing defines a seal groove therein; and
   further comprising sealing means disposed in said seal groove for providing sealing engagement between said valve and said valve housing.

66. The apparatus of claim 63 further comprising a bumper seal disposed below said valve for cushioning said valve as said valve is moved to said open position thereof.

67. The apparatus of claim 63 further comprising means for preventing relative rotation between said sliding valve and said valve housing.

A470

5,271,468

19

68. The apparatus of claim 61 wherein said valve is positioned below said housing port when said valve is in said open position.

69. The apparatus of claim 61 further comprising a poppet type valve disposed in said valve housing for providing communication between said mandrel central opening and said housing port when said valve is in an open position.

70. The apparatus of claim 54 further comprising a bridging plug disposed in said mandrel and sealingly engaged therewith.

71. The apparatus of claim 58 wherein:
said upper slip support has a tapered shoulder on a lower end thereof;
said upper slips have a tapered shoulder on an upper end thereof adapted for sliding engagement with said shoulder on said upper slip support;
said lower slip support has a tapered shoulder on an upper end thereof; and

20

said lower slips have a tapered shoulder on a lower end thereof adapted for sliding engagement with said shoulder on said lower slip support.

72. The apparatus of claim 54 further comprising a plurality of inserts molded into each of said upper and lower slips, said inserts being made of a hardened material adapted for grippingly engaging said well bore.

73. A downhole apparatus for use in a well bore, said apparatus comprising:
a center mandrel made of a non-metallic material; and
slip means disposed on said mandrel for grippingly engaging said well bore when in a set position, said slip means comprising a slip wedge made of a non-metallic material.

74. A downhole apparatus for use in a well bore, said apparatus comprising a slip adapted for grippingly engaging the well bore, said slip being made of a non-metallic, non-elastomeric material.

75. A downhole apparatus for use in a well bore, said apparatus comprising:
a slip adapted for grippingly engaging the well bore, said slip being made of a non-metallic material; and
a hardened insert molded into said slip.

* * * * *

A471